Cowen, J.
By the Court, several exceptions were taken below and most of them repeated here. The counsel for the plaintiff in error insists that, since the revised statutes requiring the intervention of an officer to distrain, trover will not lie for an illegal distress against the landlord. Indeed, it is insisted that trover would not lie either against the party or officer, even before the revised statutes, for the act of taking goods under colour of legal process; because they .were deemed to be in the custody of the law. And especially since the revised statutes, where goods are distrained, it is said the party injured has a perfect remedy by replevin, and should be confined to that.
[ *466 ] *The authority, Wallace v. King, 1 H. Black. 13, cited as questioning the right to bring trover for a wrongful distress, does *465 not apply. It relates to cases where the distress was originally lawful, but some irregularity has intervened, such as at common law would have made the party a trespasser ah initio. There, since the statute has confined the party to a special action on the case, courts have very properly held that trover should not be resorted to. No case denies, as is supposed, that it will lie for goods illegally taken under color of process. The case referred to by counsel of Jenner v. Joliffe, 6 Johns. R. 9. and 9 id. 381, was of a legal seizure of the plaintiff’s timber, by an officer at the suit of the defendant ; and yet, even there, the action was finally sustained, by reason that he had improperly interfered, and caused a conversion of part, while it was in the custody of the law. The action Avas said, in such case, to lie either against the principal or his officer. It never Avas seriously questioned that trover Avould lie for a seizure originally unlaAvful, whether under color of process or a Avarrant of distress ; and it has several times been brought and passed entirely Avithout objection, to assert the exemption of property, Avhether from execution or distress. Thus in Woodward v. Murray, 18 Johns. R. 400, the defendant in an execution, brought and was allowed to sustain trover for a cow, under the statute exempting such property from execution; and in Simpson v. Hartop, Willes, 512, and Gorton v. Falkner, 4 T. R. 565, as well as in several other like cases which I will by and by cite in another connection, trover Avas brought and passed without objection, on principles precisely the same as the plaintiff beloAV relied on in the case at bar. The plaintiffs’ goods were, as they alleged, distrained for the rent of others under circumstances Avhich exempted them from distress, although they Ayere on the demised premises at the time. And in Simpson v. Ilartop the plaintiff recovered. There can be no doubt, that in all cases of taking goods without right at the time, whether by officers or others, trover, trespass de bonis, and in general replevin are concurrent remedies. Indeed it is rather the latter action, of which the laAV is jealous, and Avhich it therefore withholds *from a defendant in an execution or attachment; [ *466 ] not even this strong action, however, Avhere his property taken is exempt. 2 R. S. 130, 2d ed. § 5. The argument that the same volume, p. 432, by expressly giving replevin for a Avrongful distress, intended to detract from remedies which existed before, derives no'color from the language used there. It is, in this respect, a mere affirmance of the common law. But that even the common law is too narrow for the action, we were finally referred to Anscomb v. Shore, 1 Camp. 285. That again is where the original distress Avas lawful. It was a distress of cattle damage feasant; and the judge held that no action would lie for detaining them, where the tender of amends Ayas not made till after the cattle Avere impounded; but in the note to that very case, id. p. 289, Coke is cited as saying, that “ tender before distress makes the distress tortious; tender after distress and before impounding makes the detainer and not the taking wrongful. Tender after *466 the impounding makes neither the one nor the other wrongful.” I want an authority that for a taking originally tortious, whether under color of dis-training or any thing else, either trover or trespass will not lie. Vid. Bac. Abr. tit. Trespass, (A). In Van Sickler v. Jacob’s, 14 Johns. R. 434, trespass was brought by a tenant for distraining his cooking utensils which he claimed to be exempt by statute, and no one thought of objecting to the form of action. It failed on another ground ; but in a like case, Hall v. Penny, 11 Wendell, 44, arising from a levy by execution, trespass de bonis was allowed without objection, and the plaintiff recovered. It must be so, from the nature of the thing. The process or distress warrant confers no authority to take the goods ; and the case is the same, in legal effect, as if the party had openly proceeded by his own naked hand.
It seems to be thought that an actual manucaption of goods is necessary to constitute a tortious taking. Rut the contrary has often been held. Any exercise or claim of dominion, though by mere words, the speaker having the goods within his power, may amount to such a taking as to warrant an action of trespass. Merely making an inventory and threatening to remove goods, which is prevented by another giving a receipt for them, [ *467 ] though they were not *touched by the officer, is sufficient. Wintringham v. Lafoy, 7 Cowen, 735. And see the cases cited and commented on by Sutherland, J. in Reynolds v. Shuler, 5 Cowen, 326. There are several subsequent cases in this court, that a mere claim of dominion, an intention being indicated to interfere with the goods under pretence of any right or authority, amounts to a constructive trespass. Phillips v. Hall, 8 Wendell, 610, 613, and the eases there cited. Allen v. Crary, 10 id. 349. Wall v. Osborn, 12 id. 39, 40. And vid. Fonda v. Van Horne, 15 id. 633.
In the case at bar, the property was distinctly levied on, an inventory and appraisal had, one of the boxes was opened ; all this was followed by the defendant’s directions to have the goods detained, and a declaration that he meant to sell them, the plaintiff, in the meantime, submitting to such control. There could not well be a clearer trespass short of an actual taking and removal of the whole. Let it be conceded that neither the defendant nor any body else for him, or acting under his authority or pretending to do so, ever touched more than one of the boxes. Such was the evidence undoubtedly. All idea of holding on was abandoned by the officer ; and no physical interference imputable to the defendant, or any one else, at least as to seventeen out of eighteen Y>f the boxes ; yet I confess I had thought the notion of moral or constructive trespass too well settled, to believe that it would, at this day, be even mooted by learned counsel. It seems to me it should be considered at rest in the mind of every one. Yet the argument continues to be thought plausible, at least, that, to constitute a trespass, there must be something which shall literally satisfy the formal allegation vi et armis, &c., and *467 not merely physical force, but physical contact. We hear it oftenest in respect to levies : and this is but one among several instances at the present term, in which it has been presented. Yet in the consideration of trespass, what distinction is better settled than that between actual force and implied or constructive force ? A.’s horse steps over the imaginary line of his farm dividing it from B.’s, A. may himself be sued as having forcibly broken the close even though there was no fence. So *of mere [ *468 ] words. Thus, in the language of Abbott, Ch. J. “ If a person send for a constable and give another in charge for felony, and the constable, tell the party charged he must go with him, on which the other, in order to prevent the necessity of actual force being used, expresses his readiness to go, and does actually go, this is an imprisonment, and gives the party thus consenting to go, an action of false imprisonment.” Pocock v. Moore, 1 Ryl. & Mood. 321. Bissell v. Gold, 1 Wendell, 210, 215, S. P. Again, by Best, Ch. J., “I should think it an imprisonment if a constable told me that I must go to Union Hall ; for I should know that if I refused he would compel me. I think it amounts to a trespass.” Chinn v. Morris, 2 Carr. Payne, 361. The distinction is between an apparent act of authority and a request ; as if an officer having civil process, out of respect to the party or the company, merely request him to come to him, or to fix his time and go and give bail; he either going off and paying no heed to the request, or afterwards volunteering to give bail. In the latter cases, trespass against the person cannot be sustained. Russen v. Lucas, 1 Ryl. & Mood. 26. Berry v. Adamson, 6 Barn. & Cress. 528. No dominion is here exercised; and the person never was in the officer’s custody. The same distinction is obvious in respect to goods, where levy or seizure is but another word for arrest. We all know how this matter is generally conducted. The officer merely gives notice to the party who procures a receiptor. The latter seldom interferes, and often never sees the goods, and the officer may or may not make an inventory. But all parties understand the goods, to be arrested and in custody of the law, though perhaps the execution or the rent is paid without the least actual interruption of the owner’s use ; and it is entirely clear that, in the absence of right or authority on the side of the officer, he would be liable in trespass. So if the goods are left either because they cannot be removed, or because the officer deems them safe where they are, or imagines, as in the case at bar, that they are replevied. The owner who sues him is not to be embarrassed by the objection, that a trespass has not been committed. The ^constable has held himself [ *469 ] out as a levying officer ; he has had the goods within his power, and in some form indicated an intention to treat them as taken from the absolute control of the owner. Upon every principle the former is estopped as against the latter, to deny a taking and asportation. If the goods be restored and accepted, very well; that goes in litigation of damages. But *469 even that will not take away the right of action. The remarks of Sewall, J. in Gibbs v. Chase, 10 Mass. R. 128, give the sense of the law, and are entirely applicable : “ An owner may admit himself dispossessed, and deprived of a personal chattel, for the sake of his remedy- He who interferes with my goods, without any delivery by me, and without my consent undertakes to dispose of them, as having the property general or special, does it at his peril to answer me in trespass as trover ; and even a subsequent tender of the goods will not excuse him if I choose to demand the value.” In Baylis v. Usher, as reported in 4 Moore & Payne, 790, 7 Bing. 158, S. C. nom. Bayliss v. Fisher, I infer that the broker distraining merely left a memorandum stating that he had seized all the goods on the premises ; and a man was put nominally in possession, for the tenant ivas never interrupted one moment in the free uso of his goods. Yet this was held a seizure, and damages recovered as for an excessive distress. Tindal, C. J., said nothing could be moved without consent from the man placed in possession. Yet it was not pretended that the goods were touched by any one except the tenant, ivho went on as usual, even driving the very team which was said to have been distrained, daily to market. In Summersett v. Jarvis, 3 Brod & Bing. 2, the defendant pretending an authority to demand the goods, the plaintiff actually delivered them to him. Yet held an illegal taking, and that trover lay without any previous demand.
In the case at bar, the levy was the same, in effect, to the plaintiff below, as if the constable had removed the boxes all to his own house. The plaintiff, like a good citizen, acceded to what the officer had done, putting hinaself on the law to vindicate his rights. He withdrew all control [ *470 ] over the boxes, on finding that the acts or declarations, or Whatever they were, would be insisted on as a levy; and he is not now, aft er bringing his action on the very ground thus furnished by the defendant himself, who never gave notice that he had changed it, and in truth never did, to he told, for the first time, “ Sir, I never took your property.” Suppose the plaintiff had actually taken back the boxes, after what had passed with the defendant’s assent; that would not have been a bar; but would only have gone in mitigation of damages. A right of action being once complete can be discharged by the plaintiff, only by a release or accord and satisfaction, as was said by Bosanquet, J., in Baylis v. Usher.
This view of the case furnishes an answer to the objection that here was in terms, no demand by Mott, or refusal by the defendant; that Mott did not exhibit any authority from the plaintiff below, to make a demand and the like. The proof was complete, that the defendant below specifically dictated the holding on to the property, again and again declaring his intention to make his rent out of that, among other goods distrained at the same time. Van Rensselaer v. Quackenboss, 17 Wend. 39, is cited to show that since the revised statutes, the officer distraining, acts under process of law ; and *470 the landlord is no longer necessarily identified with him in a wrongful distress. If that be so, he may always make himself liable, either by directing his officer to take the goods, or afterwards adopting the act. Every accessory to a trespass or other tort, is a principal; and may be sued as such. Wall v. Osborn, 12 Wend. 39. That is proved by the very case cited on the part of the plaintiff in error, Jenner v. Joliffe. By claiming to avail himself of wrongful levy or distress, made for the benefit of the party, or any way participating in it, he becomes in the eye of the law an original wrongdoer, a trespasser in his own person. Parke, J., in Wilson v. Barker, 4 Barn. & Adolph. 614 ; 4 Inst. 317; Bac. Abr. Tresp. (G) ; 2 Selw. N. P Am. ed. of 1839, 1344. And where that is so, a demand and refusal are unnecessary. A tortious taking is in itself a conversion. 2 Phil. Ev. 224, Am. ed. 1839 ; Bac. Abr. Trover (B). Such is the common law both in respect to landlord *and bailiff. The only exception is made in favor of the offi- [ *471 ] cer by the 2 R. S. 413, 2d ed., § 14, who, in the particular case of distraining exempt property, is not liable unless he have notice of the claim before sale. This, however, does not extend to the landlord. Be that as it may, however, the demand and refusal were sufficient evidence of a conversion. Mott desired the defendant to relinquish his claim. This he distinctly refused to do, and asserted his,right to distrain ; he made no inquiry for any authority. But Mott says he had an authority in fact; and surely, after what he had heard, he needed not to volunteer any farther formality, either by shewing his letter or modifying the demand. Solomons v. Dawes, 1 Esp. Rep. 83, is relied on; but there Lord Kenyon merely said the defendant was entitled to be informed of the authority, if he took his ground at the time, expressing his objection, for fear that he might deliver the goods to the wrong person. If he take other ground alone, he admits the authority. And it is very questionable whether he can insist at the trial, that there was in fact none. I should think he could not; for the plaintiff may adopt the demand of his own; which would be equivalent to an original request. Branch’s Principia, “ Omnis ratihábitio,’’ &c. Co. Lit., 207, a; 4 Inst. 317. Solomons v. Dawes is very frequently cited, as the demand in trover is often made by third persons. But it is almost always misapplied. It is looked to as the last resort, whereas it should be the first. Its principle relates to the time of the demand. But it is seldom heard of till the trial; and sometimes not till the case reaches the bar. The defendant’s own sagacity will always lead him to a proper use of it, where his excuse lies in the real want of something to guide him in seeking for the proper agent, or the true owner. Where he sets up nothing beside an adverse claim, it is right that mere formal or technical objections to the demand should be disregarded at the trial; for it is evident that he never intended to rely on such for his protection. Solomons v. Dawes, has been very well explained and limited by several American judges. Tilghman, O. J. in *472 Jacoby v. Lausatt, 6 Serg. and Rawle, 300, 305; Watt v. Potter, 2 Mason, 77, 81, [* 472 ] per Story, J., and *per Chaves, J., in Ratcliff v. Vance, 2 Rep. Const. Ct. S. C., 239, 242, 3.
Tbe judge was clearly right when he told the jury that the damages could not be mitigated by Hale’s opening the boxes in order to have them examined and appraised. This was clearly with a view to show their value on the trial; and bore no color of acceptance, or resuming the possession.
This brings us to the question, and, in all probability the only one on which the parties ever expected their rights would be determined : were the goods exempt from distress ? Being on the premises, they were prima facie liable, whether they belonged to Lovell, the tenant, or any body else. This is so of all moveable chattels, Gorton v. Falkner, 4 T. R. 565, 567, and it lay with the plaintiff to make out a case of special exemption. This he undertook to do by bringing the goods within the 2 R. S. 413, 2d ed. § 14, as having been deposited “ with the keeper of a ware-house in the usual course of his business.” That section declares that goods so deposited shall not be subject to distress for rent. The judge told the jury that a warehouse is a place where goods are kept for storage ; thus clearly including the demised premises. The counsel for the plaintiff in error denies that only part of a house can answer the word in the statute which is simply warehouse. He denies the only part of a house can be more than a iva-reroom or warerooms. He also insists that the house must be exclusively devoted to the storing business, like the flour and cotton warehouses of New-York, or those used by the collector for bonded goods; in other words, the business of the establishment cannot be of a mixed and equivocal character, partly commission business and partly storage; at any rate, the mere keeping of goods must be the principal business ; the usual business of the bailee. All this takes the "words of the statute for an exclusive standard, and sets up a construction which is extremely strict and even literal. Were the exemption an original creation of the legislature, in derogation of common right, there might be plausibility in the argument; but it is not so. It mere- [ *473 ] ly declares one “isolated instance, among many, resting on a "well established principle of tho common law; viz. that things left on the demised premises for the purpose of being dealt with in the way of trade, or wrought by the manufacturer, cannot be distrained. Lord Coke gives 'the reason : they are for benefit and maintenance of trades, and by consequent are for the common wealth, and are there by authority of law.” His illustrations are a horse in a smith’s shop, the horse, &c. in the hostelry, materials in the weaver’s shop, cloth or garments in a tailor’s shop, sacks of corn or meal in a mill, or in a market. Co. Lift. 47 a. Hargrave, note 295, adds yarn in a neighbor’s house to weigh. This is on Read v. Burley, Cro. Eliz. 549, 596, a case much considered by the chief baron so early as 39 and 40 Eliz. There the plaintiff, a clothier, sending after his *473 yarn to bis spinner’s, the latter having no weights, it was carried on the plaintiff’s horse to a neighbor’s, for the purpose of being weighed. While there on that business, the horse and yarn were both distrained by the landlord of the house. Held they were exempt, though it was but a private house; for, said a majority of the court, the trade of a clothier is pro bono publico, who ought to be allowed all necessary means. Weighing, yarn was as necessary as other means in the course of the manufacture ; and, without doubt, cloth put to a weaver to be woven, or yarn in a house to be spun, are not distrainable. In this all the court agreed ; though Walmsley, J. would not admit the analogy, because the weighbeam was not averred to be a public, beam, or place of weighing. The other judges held that the exemption did not go merely on the privilege of the place, as being one where a public trade was carried on in respect to the article ; but on the cause for which it was brought. It was in furtherance of tile manufacture. And it was said that a horse carrying corn to a market which is set up for a time in a private house, was not distrainable ; and this depended on a like principle. The case in Croke, has always been considered a leading one. It has often been recognized as law to the full extent of the principle stated by a majority of the court. In Gisbourn v. Hurst, 1 Salk. 250, Holt, chief justice, and *the whole court, again had no difficulty [ *474 ] in agreeing on this principle: “ That goods delivered to any person exercising a public trade or employment, to be carried, wrought or managed, in the way of his trade or employ, are, for that time, under a legal protection, and privileged from distress for rent.” But the case itself required a still broader principle. Certain cheese of the plaintiff had been delivered to one R. to carry from London to Birmingham. On his way, and at his home, he put his waggon, with .the cheese, into a barn, where it continued two nights and a day, when the landlord distrained it for rent due for the house, which was a private one ; not an inn. R. was not a common carrier^; but, for some small time, had brought cheese to London, and on his return took such goods as he could get to carry back by his waggon into the country, for a reasonable price. And, though the court agreed that this was but a private undertaking; yet a man undertaking for hire to carry the goods of all persons indifferently, as in that case, is, as to this privilege, a common carrier.. They said Read v. Burley was still stronger ; and see Simpson v. Hartopp, Willes, 515. The principle of these cases was very fully considered in Gilman v. Elton, 3 Brod. & Bing. 355, 6 Moore, 242, S. C. It was trover, for bombazines, which the plaintiff, a bombazine manufacturer, had sent to one M. his factor, in London, to be sold in the usual course of his business. M. was a factor and broker, and traded on his own account. The goods were in his ware-room and counting house, for the rent of which they were distrained. The case was ably and learnedly argued, as will be seen best by the report in Moore ; and adjudged for the plaintiff *474 on the broad ground of public convenience ; the convenience of having such agents in the market by whom goods may be sold. Then came Thompson v. Mashiter, 1 Bing. 283 ; 8 Moore, 254, S. C. which extended the protection to goods deposited by the plaintiff’s factor in a common ware-house, until they could be sold. This is undoubtedly the case adopted by the revised statutes. One R. had a public water-side wharf, over which stood [ *475 ] the ware-house in question, devoted to the *purposes of storage, and where he used to receive goods at a rent; and if it could be supposed that the exemption were tied up to such a case, then the counsel for the plaintiff in error is right. But the court there go on the broad principle of Gisbourn v. Hurst, Dallas, Ch. J. saying the principle would protect the goods, had they been deposited on the wharf; and here they might be viewed as on deposit with a ware-house man and rtharfinger, for the purpose of being sold. Mr. Justice Park said : “ It is unnecessary to specify any particular species of trade where goods may be protected; as the general principle extends to exemption from distress, not on account of the individual in whose hands they are deposited, but for the benefit of trade, which alone is to be considered, and for which only such goods are by law to be favored and protected.” All the judges concurred in this broad principle. Matthias v. Mesnard, 2 Carr. & Payne, 353, S. P. Mere custody at the demised premises, for the purposes of sale or trade, or stopping at the premises on the way to deliver goods sold, or to do any ac t necessary or convenient for finishing an article of manufacture, and the like, are enough to confer the protection, not only where the premises are commonly used for the purpose,'but also where they are used privately for the particular occasion, and although they had never been occupied for such a cause before. Both English and American judges seem inclined to extend the principle. In Brown v. Sims, 17 Serg. & Rawle, 138, the same point as in Thompson v. Mashiter was held. There the tenant carried on the business of a merchant in his ware-house, and the court held that this made no difference. True, Chief Justice Gibson thought the principle of the exception might’ eat out the rule on which the landlord’s right to distrain a stranger’s goods, is based. But he does not say this censoriously; and the prospect of such a consummation is not very alarming, especially in this country. Francis v. Wyatt, 3 Burr. 1481, W. Black. 483, which held a carriage at a livery stable not to be exempt, is questioned by the [ *476 ] learned judge ; and again by Youngblood v. Lowry, *2 McCord, 39. This last case puts horses at livery stables on the same footing with those at inns. The argument of Mr. Justice Bay in the last case, indicates that he felt no uneasiness from seeing the principle of exemption most liberally applied. It had before been extended in his state to goods left with an auctioneer for sale. Himley v. Wyatt, 1 Bay, 102.
I entertain not the least doubt, and have long felt no difficulty in believ *476 ing that the principle of the exception has always been, and is now, in its broadest sense, the law of this state. True, the revised statutes have put several cases of exemption, some qualified and some absolute. The latter are mostly to be found in Black. Comm. 8, where the author also lays down the principle of the books : “ Privilege for the benefit of trade.” Modern cases say that his instances, which are about the same as those of Coke, are put merely by way of example ; and no doubt the revised statutes followed the same plan. I think they virtually tell us so; for, at 2 R. S. 412, § 10, sub. 1, 2d ed., after declaring chattels distrainable, they except, among others, such as are by law exempt from distress. The words do not mean mere statute law.
This being so, the ground on which the plaintiff in error seeks to stand utterly fails him. Storing goods to await an opportunity for sale is, in itself, enough to raise the protection. The law looks to the convenience of trade in the abstract; not the particular character of the place or the bailee, A warehouse, wareroom, wharf or other place of storage, in the hands of a merchant or other person, may all subserve the exigencies of trade; and if they do so in fact, the principle of the exception applies. True, the particular cases which have arisen relate to common warehouses. But is it possible, after what has been adjudged, that the resort to a merchant’s room; though it had never been used 'as a place of storage before, shall not stand equally clear of peril from the landlord’s distress ? Suppose it the first instance, in a room afterwards commonly used, and a distress before the second parcel come in. The pumps were left by *the [ *477 ] plaintiff below at Lovell’s store to be sold by some one, the owner, or Lovell, which you please. That makes a case pf exemption.
We think the judgment of the New-York common pleas should be affirmed.
Judgment affirmed.*

 Connah, the defendant below and plaintiff in error in the supreme court, removed the proceedings into the court for the correction of errors, where, in December, 1840, the judgment of the supreme court was unanimously affirmed.