Gridley, J.
 

 — The questions involved in the decision of this cause are: 1. Whether the plaintiff was the owner of the lumber delivered to the defendants on the 16th of July 1842. 2. Whether the defendants were
 
 *363
 
 guilty of a conversion of it; so as to authorize an action of trover against them. 3. Whether there was any error in the charge, as to the amount of damages, or otherwise.
 

 I. There is nothing developed by the evidence on this trial, of the relations between the plaintiff and Potter, nor of the dealings between Potter and the defendants, that in the slightest degree *affects the title of the „
 
 t
 
 plaintiff to the lumber in question. The evidence on this point is the same that was given on the former trial, and the adjudication of the court on this point is just as applicable now, as it was when the opinion was delivered in 1847. By both contracts between the plaintiff and Potter, it was provided, that the plaintiff should hold the
 
 title
 
 and
 
 possession
 
 of the lumber,
 
 until he should be paid, the full amount of the pwrchase-money,
 
 with interest; and that Potter, as the agent, and in the
 
 name of the plaintiff,
 
 should ship the lumber to the defendants (Potter paying the freight), to be sold by them
 
 as the property .of the plaintiff.
 
 In addition to this, Banks, the master of the boat, who transported the lumber to Albany, gave a bill of lading to the plaintiff, which expressed on its face that he had received the lumber of A. F. Potter, for the plaintiff, to be delivered to the defendants, at Albany. All the interest which Potter had in the lumber, so far as respected his right to dispose of it as his own, was no more than of a common carrier; and the defendants could derive no more interest in the lumber from him, than if he had been a common carrier.
 

 The authorities cited by Bkonson, J., in the opinion delivered in this cause, when it was before the court on a former occasion (4 Denio 323), abundantly established this proposition. The remarks of the Chancellor in
 
 Saltus
 
 v.
 
 Everett,
 
 in the court for the correction of errors (20 Wend. 272), are to the same effect. “The plaintiffs in error were not entitled to the goods in question, on the ground that they were the purchasers thereof, without notice of the rights of the real owner; they
 
 *364
 
 were in the same situation in this respect, as every other purchaser of goods from a person who had no authority to sell. If . the owner of the goods had caused the bill of lading to be made out in the name of Collins, so as to give him a
 
 primd facie
 
 right to the goods as owner, or consignee for his own. benefit, a
 
 bond fide
 
 purchaser might have been entitled to protection. Here, the change of the bill of lading itself was a fraudulent act on the part of the master of the vessel, or his agent, and could not defeat the right of the owner of the goods, who had not authorized any such change.”
 

 * 380 1 *"*"n ^le case now under consideration, the -* only bill of lading was delivered to the plaintiff. The paper signed by Potter was not a bill of lading, in any of its features, nor did it possess the transferable quality of a bill of lading. (Jac. Law Dic., tit. Bill of Lading; 1 H. Bl. 359, 360; Bouv. Law Dic., tit. Bill of Lading.)
 
 [1]
 
 But if it were a good bill of lading, then it is exposed to the charge of being manufactured in fraud of the plaintiff’s rights, which was held to be fatal in the case of
 
 Salim
 
 v.
 
 Everett.
 
 (See also, 15 Wend. 474 ; 2 Kent’s Com. 323; 1 Cush. 545; 3 Id. 492.)
 

 Again, the defendants are not protected under the statute relating to principals and factors. (Laws of 1830, c. 179; 1 R. S.' 762-3; 2d ed.) The defendants do not come within either section of the act. They are not within the first section, because the lumber was not shipped in the name of Potter, but of Covell, the regular bill of lading being made out to the latter. The defendant also had notice of the true ownership of the lumber; the witness Waier testifies that he delivered the lumber to the defendants; at Albany, and told them it was
 
 the Covell lumber,
 
 in answer to a question put to him, to whom the lumber belonged. This was certainly enough to put them on inquiry, especially, as they had no legal documentary evidence of title furnished by a bill of
 
 *365
 
 lading. The second section of the act declares, that no lien shall exist, when the consignee shall have notice, from the bill of lading, or
 
 otherwise,
 
 that the person in whose name the shipment is made is not the
 
 bona fide
 
 owner. The defendants are not within the third section, because the owner never
 
 intrusted
 
 Potter with a bill of lading, nor with the possession of the lumber for sale, or as security for advances to be made thereon. (4 Denio 331; 6 Mees. & Welsb. 572; 9 Id. 647. )
 
 [2]
 
 There does not appear to be any reason to dissent from the construction which is given to this act, by Judge Bronson, in
 
 Stevens
 
 v.
 
 Wilson
 
 (6 Hill 512), which is the same that is given to it by the chancellor, in the same case in error (3 Denio 472), where the judgment was affirmed. The result is, that the plaintiff was the sole and exclusive owner of the lumber in *the hands of the defendants, unin- # ^ cumbered by any lien for advances made by *- them to Potter, and he had a right to control and dispose of it as he saw fit.
 

 II. The second question is, whether the defendants have been guilty of a conversion of the lumber. The case is now unembarrassed by the difficulties with which it was beset when it came before this court on a former occasion. (1 N. Y. 522.) It came up then on a special verdict, which did not find the fact of a conversion, but which found some facts that seemed to be inconsistent with it. Now, however, the facts are all before the court, and the jury have found as a question of fact, “ that the defendants had unlawfully converted the lumber of the plaintiff,” and unless some error was committed by the judge, in submitting the question to the jury, there can no longer be any controversy on this point. This leads us to consider the evidence upon which this question was submitted to the jury.
 

 It will be borne in mind, that the plaintiff was the exclusive owner of the lumber, by virtue of the contract
 
 *366
 
 between him and Potter; and also, that there was evidence given by the witness Waier, that the defendants were informed of the ownership of the plaintiff, when the lumber was delivered; certainly, evidence enough to warrant its submission to the jury. In addition to this, the witness Hiram Gray testifies, that after a sufficient time had elapsed for the lumber to reach Albany, he called and informed a man apparently in charge of the defendants’ business, of the facts in relation to the lumber in-question. In a week or two, he called again, and saw Mr. Hill, one of the defendants, and told him that the lumber was owned by the plaintiff, and that he had forwarded it to be sold for himself. Mr. Hill replied, that the lumber was passed to the credit of B. A. Potter, on their books,' that Potter was largely indebted to the defendants, and that “ they were glad to get so much.” The plaintiff wrote two letters afterwards, one on the 22d of August, and another on the 8th of October, asserting his right to the lumber, and insisting that the defendants should sell it for him. Mr. Hathaway, about the 1st of September in the same year, demanded the ^ lumber, in the *name and on behalf of the plain- -* tiff, and offered to pay any charges upon it; but the defendants refused to accede to this demand, and claimed the lumber, on the ground that Potter was indebted to them, and' that they had passed it to his credit; in other words, that they had appropriated it to the payment of a debt due from Potter to them.
 

 Now, it is nowhere shown by the defendants, when they sold any part of this lumber. The book-keeper, Thomas, proves nothing about it, and the parcels of lumber sold on the 21st and 22d of July, and on the 11th day of August, were not parcels of the lumber in question, but parcels of the 329,000 feet, received between the 26th of May and the 16th of July 1842. Nor did the defendants, at any time, take the ground, that the lumber or any part of it had been sold, but reposed, themselves
 
 *367
 
 on their right to apply it to the satisfaction of their debt against Potter. There was no reason to believe that any portion was sold, when Mr. Gray first informed Mr. Hill that the plaintiff owned the lumber; nor is there any proof, that any of it was sold, when the demand was made by Mr. Hathaway.
 

 Under this evidence, the judge submitted the question to the jury, to decide whether the defendants sold the lumber for themselves, claiming the right to do so, after notice that it belonged to the plaintiff; and instructed them, that if they did, such act would be evidence of a conversion. In this, we think, there was no error. The sale was not by consent of the plaintiff. The plaintiff never authorized a sale of the lumber by the defendants, under an adverse and hostile claim of title, and in assuming to make the sale in subversion of the plaintiff’s rights, instead of making it in subordination to them, and in pursuance of his request, was a conversion, according to all the authorities. In
 
 Murray
 
 v.
 
 Burling
 
 (10 Johns. 175), Mr. Justice Thompson says, “assuming to one’s self the property and right of disposing of another man’s goods, is a conversion, says Lord Holt, in the case of
 
 Baldwin
 
 v.
 
 Cole
 
 (6 Mod. 212.) And this principle is adopted and sanctioned by Lord Ellenborough, in the case of
 
 McCombie
 
 v.
 
 Davies
 
 (6 East 540).” Mr. Justice Beardsley *says, in
 
 Schroeppel
 
 v.
 
 Corning
 
 (5 Denio 240), “a wrongful taking, or assumption ^ of a right to control or dispose of property, constitutes a conversion. Indeed, any wrongful act which negatives or is inconsistent with the plaintiff’s rights, is
 
 per se
 
 a conversion. It is not necessary, that the defendant should have made use of the property in any way. Does he exercise a dominion over it, in exclusion, or in defiance, of the plaintiff’s right ? If he does, that is, in law, a conversion, be it for his own or another person’s use.” In
 
 Connah
 
 v.
 
 Hale
 
 (23 Wend. 462), it was held, that to constitute a tortious taking, it was not necessary
 
 *368
 
 that there should be an actual manucaption of the goods; a mere claim of dominion, an intention intimated, to interfere with the goods, under a pretence of right or authority, amounts to a constructive trespass, and no demand is necessary, before bringing an action of trover. (See also 24 Wend. 169; 2 Fairf. 28.)
 

 III. When the testimony was all given, the counsel for the plaintiff limited his claim to recover, to the value of the lumber, deducting the forty-six dollars and the money paid for freight, and the judge charged in accordance with that principle. The defendants, certainly, could not claim their commissions for selling the lumber, as the act of sale was a violation of the plaintiff’s rights; and we have already seen, that they had no claim for their advances. Potter’s contract had been forfeited by his failure to pay for the lumber, and his fraud in disposing of it as his own and getting an advance upon it. His conduct amounted in law to a rescission of the contract, and a forfeiture of all his rights under it. More over, by the terms of the contract, the plaintiff was enti. tied to receive the
 
 entire avails
 
 of the lumber.
 

 Judgment affirmed.
 

 [1]
 

 Gage
 
 v.
 
 Jaqueth, 1 Lans. 207.
 

 [2]
 

 See Bank of Toledo v. Shaw, 61 N. Y. 283.