ELDRIDGE *vs.* ADAMS.

54b     417
168 NY 1540

Although the forms of action were abolished by the Code, the principles by which the different forms of action were previously governed still remain, and now, as much as formerly, control in determining the rights of parties.

In pleading, a party is now to state the facts on which he relies to sustain a recovery; and if issue be taken thereon, he will be entitled to just such a judgment as the facts established will by the rules of law warrant, without regard to the form or name of his action.

By the rules of practice and pleading before the Code, an action of trover could not be sustained without proof of a detention or conversion of the property alleged to have been unlawfully taken; but as the forms of pleading do not now control, the court, in an action for wrongfully taking and carrying away and converting property, must examine the evidence, and if the proof, or facts found by the jury, entitle the plaintiff to a judgment, such judgment should be given, even though not asked for by the complaint.

The plaintiff having in his possession a buggy wagon which he had hired for a year, from J., let it to the defendant. It was used by H. and was brought back and received by the plaintiff. The wagon having been injured by H. during its use, the plaintiff sent it to a shop, for repair. H. afterwards told him to get the wagon fixed and he would pay for it; the defendant becoming his surety for such repairs. Subsequently H. and the defendant took the wagon to another shop, had it repaired and returned it to the plaintiff, before suit brought, and it remained in his possession. *Held* that the bailment of the wagon continued until it was repaired and returned; and there being an implied license from the plaintiff to H., and the defendant acting under him, to have the wagon repaired, the removal of it from one shop to another, for that purpose, was not an unlawful *taking* of the property.

*Held, also,* that there was no *conversion;* that the defendant was guilty only of a mere asportation; he did not interfere with the plaintiff's dominion over the wagon; his title being recognized and acknowledged, throughout; it was not taken or detained with the intent to convert it to the defendant's use, or the use of any one else; he assumed no ownership over it; and it was not injured while in his possession.

*Held, further,* that even if it were conceded that the defendant was guilty of a technical trespass, the plaintiff was not entitled to recover the full value of the wagon. That he having but a special property in the wagon, under a bailment for a year, and it not having been converted, J., the general owner, could, at the expiration of the year, follow and take it, wherever found.

That there being not only no conversion, but a return of the property before suit brought, the plaintiff's refusal, then, to accept it, entitled him to recover only the value of his special property. And that, in the absence of any proof of the value of the plaintiff's special interest in the wagon, the court could not assume it to be over six cents.

THIS is an application for judgment upon a verdict subject to the opinion of the court at general term.

The action was for wrongfully taking and carrying away and converting a certain buggy wagon of the value of $250, for which sum the complaint demanded judgment.

The answer, *first*, denied the complaint; *second*, averred that after the alleged taking, and before action, the defendant returned the buggy to the plaintiff's possession, in better condition than at the time of the alleged taking, and that the plaintiff has ever since retained it. *Third*, that in July, 1864, the plaintiff kept a livery stable; that on that day the defendant obtained of the plaintiff a horse and buggy for one Hall; that on Hall's return the buggy was broken; that the plaintiff claimed damages; that it was agreed between the plaintiff, defendant and Hall, that the plaintiff should send the buggy to be repaired at the expense of Hall, the defendant guaranteeing the payment of all expenses; that the plaintiff sent the buggy to the shop of one Francisco; that the next day the defendant and Hall went to said shop, and the buggy not being repaired or in process of repair, they, with said Francisco's assent, took the buggy to another shop, had it repaired the same day and returned to the plaintiff's premises, and the plaintiff was notified of the fact.

The testimony showed that in July, 1863, the plaintiff had in his possession a buggy wagon hired from one Jenkins until the next May; that the plaintiff let it to the defendant; that it was used by one Hall; that it was brought back the same day and received by the plaintiff; that it had been injured by said Hall during its use; that the plaintiff sent it to the shop of one Francisco for repair; that the plaintiff, after that, saw the defendant and Hall, and that Hall told him to get the buggy fixed and he would pay for it, and the defendant became Hall's surety for such repairs; that at this time some unpleasant words

Eldridge *v.* Adams.

passed between the parties; that in the. afternoon Hall and the defendant took the buggy from Francisco's shop, without any objection on his part, to another shop, had it repaired and returned to the plaintiff by four o'clock of the same day; that the plaintiff got out a summons in this action before he heard that the buggy had been returned; that the summons was not served until about eight o'clock; that the plaintiff examined the buggy the next morning, and notified the defendant that he should not receive it; and the buggy still remains in the plaintiff's possession.

At the close of the plaintiff's evidence the defendant moved for a nonsuit, which was denied, and the defendant excepted.

At the final close of the case the court submitted the following questions to the jury: 1st. When the wagon was repaired and returned by the defendant, was it accepted by the plaintiff? 2d. If you answer the first question in the negative, then, what was the value of the wagon at the time it was taken by the defendant?

The jury answered the first question in the negative, and found the value of the wagon to be $200.

The court thereupon directed a verdict for the plaintiff, subject to the opinion of the court at general term.

*Merrill & Cowen*, for the plaintiff.

*J. A. Shoudy*, for the defendant.

*By the Court*, JAMES, J. Upon the foregoing facts and verdict, the plaintiff moved at the last general term for judgment for $200 damages. This motion was resisted by the defendant, who demands judgment in his favor, for costs.

. Although all forms of action were abolished by the Code, the principles by which the different forms of action were previously governed still remain, and now, as much as

formerly, control in determining the rights of parties. In pleading, a party is now to state the facts on which he relies to sustain a recovery, and if issue be taken thereon, he will be entitled to just such a judgment as the facts established will by the rules of law warrant, without regard to the form or name of his action.

In this case, the complaint charges an unlawful taking and conversion. For an unlawful taking the remedy would formerly have been trespass; but for an unlawful taking and conversion the action would have been trover. It has often been said that trover would lie wherever trespass could be maintained; that, however, was not quite correct, because trover could not be maintained unless there was some act amounting to a conversion; while trespass could be sustained for any unlawful touching, or taking. The present, judged by the rules of practice and pleading before the Code, would be an action of trover; and it could not be sustained without proof of a detention or conversion of the property alleged to have been unlawfully taken, (*Fouldes* v. *Willoughby*, 8 *Mees. & W.* 540;) but as the forms of pleading do not now control, we must examine the evidence, and if the proof or facts found by the jury entitle the plaintiff to a judgment, such judgment should be given him, even though not asked for by the complaint.

Upon the facts, two questions arise: Was there any unlawful taking of the property in dispute? Was there any conversion of such property?

In considering the first point, it is proper distinctly to understand the subject matter of the action, the acts complained of, and the relation of the parties to the subject matter, to each other and to the act. The subject matter was a buggy wagon, the act a temporary removal from one wagon shop to another for repair, and its immediate repair and return. The parties had been bailor and bailee of the subject matter; it had been injured during the

bailment, by the bailee, and the bailor had called upon the bailee to repair and he had assented and agreed to pay for such repair. This being so, the bailment of the buggy continued, and Hall was liable for its use, until it was repaired and returned. The case shows an implied license from the plaintiff to Hall, and the defendant acted under him, to have the buggy repaired, and hence the removal proved was not an unlawful act. An implied license is one which, though not expressly given, may be presumed from the acts of the party having a right to give it, or from the character of the act.

In this case, the acts and the demand of the plaintiff warranted Hall in believing that he was to be held responsible for the use of the buggy during its repair, as well as for its repair; and there being no demand for specific damage, or place of repair specified, it was a fair inference from the facts that Hall had liberty to get it repaired where he pleased, and as soon as he could. His acts in removing the buggy with the defendant's aid, and returning it in a few hours repaired, is consistent with this view; it shows Hall so understood it, and acted upon such understanding.

In this view the plaintiff has established no cause of action, and judgment should be given for the defendant, notwithstanding the verdict.

But suppose the foregoing conclusion wrong, and that the removal of the buggy for repair was a wrongful act, then will arise the second question, "Was there a conversion of the property?"

It is certain there was no conversion, or intent to convert, in *fact*. The property was taken from one mechanic shop to another for repair, immediately repaired and returned to the plaintiff's premises; and although he refused to receive it, it remained, with him at last accounts.

But it is claimed the taking being unlawful, that of itself constituted a conversion. To sustain this position the

court was cited to *Bristol* v. *Burt,* (7 *John.* 254;) *Murray* v. *Burling,* (10 *id.* 172;) *Reynolds* v. *Shuler,* (5 *Cowen,* 323;) and *Connah* v. *Hale,* (23 *Wend.* 462.) But neither of these cases sustains the plaintiff's position. In each case there was a conversion proved independent of the unlawful taking. In *Bristol* v. *Burt,* the defendant refused the plaintiff his property after demand. In *Murray* v. *Burling,* the defendant had disposed of the property. In *Reynolds* v. *Shuler,* the property was sold at auction. In *Connah* v. *Hale,* the defendant refused to deliver up the property on demand. The substance of these decisions, so far as they bear on this case, is that "if one undertake to exercise dominion over personal property, in exclusion, or in defiance of the owner's right, it is a conversion." That is the difference, and a very important difference it is, between those cases and the present. In this case the defendant did not "undertake to exercise any dominion over the buggy in exclusion or in defiance of the owner's rights." All he did was in subordination and acknowledgment of the plaintiff's rights.

This case is more like that of *Fouldes* v. *Willoughby,* (8 *Mees. & Wels.* 540,) where the defendant, having charge of a ferry boat, after the plaintiff had paid the fare for himself and two horses, the defendant, for some misconduct, told the plaintiff to remove his horses from the boat, as he would not carry them; the plaintiff refused, and the defendant took them from the plaintiff and put them on shore; the defendant remained on board and was carried over the river. On the trial, at *nisi prius,* the judge charged "that the defendant, by taking the horses from the plaintiff, and turning them out of the vessel, had been guilty of a conversion." The Court of Exchequer on a rule to show cause, held the charge wrong, "that the mere wrongful asportation of a chattel did not amount to conversion, unless the taking or detention of the chattel was with the intent to convert it to the taker's own use, or that of some

third person, or unless the act had the effect either of destroying or changing the quality of the chattel." In the same case Lord Abinger said: "It is a proposition familiar to all lawyers, that a simple asportation of a chattel, without any intention of making any further use of it, although it may be a sufficient foundation for an action of trespass, is not sufficient to establish a conversion." "In order to constitute a conversion, it is necessary either ·that the party taking the goods should intend some use to be made of them, by himself, or by those for whom he acts, or that owing to his act the goods are destroyed or consumed, to the prejudice of the lawful owner." "That it had never yet been held that the single act of removal of a chattel, independent of any claim over it, either in favor of the party himself or any one else, amounted to a conversion of the chattel." Baron Alderson recognized as the true principle the statement of counsel in *Shipwick* v. *Blanchard*, (6 *T. R.* 299,) which was this: "to maintain trover, the goods must be taken or detained, with intent to convert them to the taker's own use, or for the use of those for whom he is acting. But that when a man does an act, the effect of which is not for a moment to interfere with the dominion of the owner over the chattel, but, on the contrary, recognizing throughout the title of such owner, such an act cannot be said to be a conversion." It was held in *Heald* v. *Carey*, (9 *L. and E. Rep., Eng. Com. Pleas*, 429,) that there is no conversion of goods for which trover will lie, unless there be a repudiation of the right of the owner, or the exercise of a dominion over them inconsistent with that right.

The defendant in this case was guilty only of a mere asportation of the buggy; he did not interfere with the plaintiff's dominion over the buggy; his title was recognized and acknowledged throughout; it was not taken or detained with the intent to convert it to the defendant's

use, or the use of any one else; he assumed no ownership over it; it was not injured while in his possession. In fact there was no element in the proof on which a conversion could be predicated.

In this view, even the cause of action set forth in the complaint wholly fails, "as no damages are recoverable in the form of trover for the simple act of taking." (*Cooper* v. *Chitty,* 1 *W. Black.* 65. *Bushel* v. *Miller,* 1 *Strange,* 128.) But as all forms are abolished, the action must stand or fall upon the facts proved. If it were conceded that the defendant was guilty of technical trespass, the question would only be one of damages. Even in that view the plaintiff claims to recover the full value of the buggy, by the jury fixed at $200. There are several reasons why he should not recover that amount. He had but a special property in the buggy, a bailment for a year; and it not having been converted, the general owner, at the expiration of the bailment, could follow and take it wherever found, as this action would be no bar to his rights. There was not only no conversion, but a return of the property was made before suit brought, and the plaintiff's refusal then to accept only entitled him to recover the value of his general property. In *Brierly* v. *Kendall,* (10 *L. and E. Rep.* 319,) goods had been left as security for a debt, to be void on payment of a specified sum by a certain day, the assignor to have possession until default; before default the goods were seized and sold. Held that bailor could maintain trespass, and that his measure of damages was not the value of the goods, but his limited interest therein. In this case there was no proof of the value of the special interest of the plaintiff in the buggy, and this court cannot assume it to be over six cents.

In my view of the case there was an implied license to Hall and the defendant to do precisely what they did do; and judgment should, therefore, be given for the defend-

ant, with costs; but if my brethren do not concur in this view, then the plaintiff is entitled to judgment for six cents damages.

Judgment was directed for the defendant.

[St. Lawrence General Term, October 2, 1866. *Bockes, James, Rosekrans* and *Potter,* Justices.]