By the Court.—Sedgwick, Ch.
It will be assumed that the pláintiff had authorized the defendant to pledge its bonds for the purpose of borrowing money for the corporation. Vet if the evidence did not conclusively show, it would have sustained a finding by the jury, that the authority was confined to a pledging of the bonds for the sole benefit of the corporation, and did not extend to pledg- . ing the bonds for the benefit of any other than the corporation, or for the benefit of the corporation in part and of another in part.
It may be assumed also, that one authorized mode of borrowing money for the corporation, was upon the note of the defendant secured by the bonds of the corporation. The defendant made his note for $50,000, and obtained upon it a loan of like amount, giving as security for its repayment 32 bonds made by the plaintiff and 50 bonds of the Houston Street Ferry Company. Of the loan obtained by the defendant, he handed over to his brother $30,000 and to the. plaintiff $20,000. The pledging of the bonds of the *6 plaintiff was as much for the benefit of the defendant or his brother, as of the plaintiff. This had not been authorized by the plaintiff, and was a conversion. The decision in Laverty v. Snethen (68 N. Y. 522), supports this conclusion and it cites cases enough to make all the distinctions that it would be expedient to examine. The rule is, that when the disposition itself of property by an agent has been made in accordance with authority given, it is not conversion, and any cause of action, if one exist, must be based upon some other act of the agent which is wrongful, if such were done. If the disposition is unauthorized, it is a conversion.
The act will be a conversion, although taken by itself, it corresponds to what was authorized, if it be done by the agent in derogation of the claims or rights of the principal.
In Covell v. Hill (6 N. Y. 374), the plaintiff had made a conditional sale of lumber. The conditional purchaser shipped the lumber and received a bill of lading in the name of the plaintiff, the owner. He substituted for this, a paper signed by himself, which stated a shipment in his own name-as consignor and delivered it with the lumber to the defendants as :consignees, and received advances from them. The owner plaintiff, notified the consignees defendant, that he owned the lumber and insisted that the defendants should sell it for him. They in fact sold the lumber, to protect their advances to the conditional purchaser. The opinion says, “ the judge submitted the question to the jury to decide whether the defendants sold the lumber for themselves, claiming the right to do so, after notice that it belonged to the plaintiff, and instructed them that if they did, such act would be evidence of a conversion. In this we think there was no error. The sale was not by consent of the plaintiff. The plaintiff never authorized a sale of the lumber by the defendants under an adverse and hostile claim of title, and in assuming to make the sale in subversion of the plaintiff’s rights, instead of making it in subordination to them, and in pursuance of his request, was a conversion, *7 according to all the authorities.” This case is cited that it may be applied to the fact that the form of the loan procured, was in some respects, like that which it is assumed had been authorized by the plaintiff; for instance, upon the note of the defendant. Yet there was an essential difference, for there is no evidence to show that the defendant was authorized to make his note for an amount larger than the amount he borrowed for the corporation.
Some arguments were made on the appeal, that seem to be determined by the facts. It was argued that the defendant received no personal benefit from the transaction of pledging the bonds. This is not an element of conversion. That consists in a tortious exercise of dominion over another’s property. The degree of material benefit received by the wrongdoer does not make the act tortious, nor does an absence of interest tend to show that the owner was not deprived of his dominion over his property. The testimony here shows that either for his own benefit or his brothers, which is immaterial, he received part of the loan made upon the plaintiff’s bonds.
It was also argued that the original taking by the defendant of the bonds was not tortious, and therefore the subsequent acts did not constitute a conversion. In fact, the jury might have' found, that the defendant from the first procured the bonds for the tortious purpose of disposing of the bonds in a way that has been held to be a conversion. Suppose it otherwise, and that the defendant had been entrusted with the bonds for ‘ the purpose of making the authorized loan before he thought of making the unauthorized loan, there was nothing in the previous custody that altered the character of the subsequent conversion.
There was an argument that all the money raised on the bonds for the company went into their treasury and was used for their'benefit. This is true in this way only, that if the defendant had in fact procured a loan upon the bonds for the plaintiff only, it could not, as the defendant assumes the evidence was, have been greater than the *8 amount that was actually paid over to'the plaintiff. This does not avail tó show, that the plaintiff was not harmed, because as might have been found oh the settlement, they were obliged to pay more than the $20,000 they received, to regain their bonds, as a consequence of the loan in its actual shape.
This opinion has given the defendant the benefit of all the testimony that tends to show any authority in the defendant from the plaintiff to raise money upon its bonds. There is none that tends to show that there was any authority to use the bonds to any extent for a loan to the defendant or to his brother. There was no evidence of any ratification of the loan as actually made.
This opinion has regarded only the loan made upon the security as part of the 32 bonds, named in the first cause of action.' The testimony as to the 22 bonds in the second cause of action, is so meagre that I do not think any opinion can be given as to the rights of the parties in respect of them. Indeed on another trial, it will be well to make the facts of the whole case clearer and more definite than they appeared on the trial had.. On the conclusions reached as to the first cause of action, a new trial should be ordered.
Judgment reversed and a new trial ordered, with costs of the appeal to abide the event.
O’Gorman, J., concurs.