## Briggs, Lacoste & Co. *v.* The Planters' Bank.

Where a promissory note expressed on its face that the same was given to secure the purchase money of land, and that the land was also bound for its payment; held, that the express lien created thereby on the land was assignable in equity, and that the same might be enforced against any subsequent incumbrancer, having notice of its existence.

A party cannot be divested of a prior lien, unless there is some fraud or deception in the creation of such lien.

A court of equity never compels a party having a prior lien upon two funds to resort to one only, in order that a junior lien may be satisfied out of the other, unless it appears that the one which is not affected by the junior lien is fully adequate to the satisfaction of the prior lien, and that the remedy for realizing it is prompt and efficient.

Where there were two liens upon the same land, the senior lien being a judgment at law, and the junior lien a decree in equity; ordered by the chancellor, that the land be sold subject to the prior lien.

The bill states that complainants are the assigness of two promissory notes given for the purchase money of land, and specifying on their face that the land was bound for their payment. That said land was sold by one James R. Creecy to William B. Creecy and L. H. Smith. That prior to said sale divers judgments at law were recovered against said James R. Creecy, all of which have been satisfied except one in favor of the Planters' Bank. That much more than enough money has heretofore been made by the sheriff of Yazoo county to satisfy the judgment in favor of said bank; but that said sheriff wrongfully applied said money, in satisfaction of judgments against said James B. Creecy recovered subsequent to the sale of said land. That the Planters' Bank negligently permitted the said sheriff so to apply the said money, to the great prejudice of complainants. That execution issued on the judgment in favor of said bank, and that the land in controversy was levied on and advertised to be sold by virtue of said execution, which was enjoined.

The bill further states that there is property now in controversy

in this court in the case of Briggs, Lacoste *et al. v.* James R. Creecy *et al.*, which has passed into the hands of a receiver, and which will, on the decree in that cause, let it be decided which way it may, be liable to the judgment in favor of said bank. That said bank has two funds to resort to, and complainants only one; and in addition thereto, that said bank having negligently permitted, without an effort to prevent it, the sheriff to apply the money to junior judgments against said James R. Creecy, which should have been applied to the judgment in favor of said bank, said bank cannot now be permitted to take from complainants the only fund they have to secure their debt; especially as it is alleged that said James R. Creecy was in failing circumstances at the time said notes were assigned, and the makers utterly insolvent, and that complainants took them relying upon the lien created upon the said land.

The Planters' Bank demurred to the bill.

S. S. Boyd for the demurrer.

In this case the demurrer of the Planters' Bank is based on the following grounds:

1. That James R. Creecy, who is the payee and assignor of the notes in question, is a material party in interest, and should be made a defendant, and that Buford ought not to have been made a defendant.

2. That the assignee of a promissory note given for the sale of land acquires no right to the tacit lien which exists in favor of the vendor, unless the contract of assignment is so expressed. Here the bank had a prior lien. 3 Yerger Rep. 34; 1 Paige Rep. 506.

3. There are not two funds out of which the bank can have satisfaction of her debt. The supposed fund referred to by complainant is a mere contingent interest in a law suit, and not a fund that can be resorted to at once, if at all.

It is no where averred in the bill that J. R. Creecy, the assignor of the notes, is insolvent, but merely that he was believed to be in doubtful or insolvent circumstances when he assigned the notes. This is too vague, and may have been quite different when the bill was filed, and even at the present time.

The negligence of the Planters' Bank is not pointed out, nor in

what it consisted. The charge is vague and indefinite, nor are any executions or judgments shown to which the bank permitted the money said to have been received by Buford to be applied, so that we have no opportunity to contest any fact by way of answer, but merely to reply by way of conjecture to a doubtful and uncertain charge. Nor is it shown that the bank had notice of any motion to appropriate the money.

The lien of the Planters' Bank by her judgment is older than the supposed lien of complainants, and there is no fact clearly set forth which shows or tends to show that the senior lien has been lost or postponed. There are no dates given either of the Planters' Bank judgment nor of the other judgment to which the money collected by the sheriff has been applied. It therefore cannot appear that the bank has delayed her judgment improperly or negligently for one hour.

The money said to have been collected by the sheriff is not said to have been the money of Creecy, and it is only by implication that it can be inferred to be so. And it is said to have been paid over by him wrongfully, which, of course, releases the bank from all idea of culpability.

WILKINSON and MILES, *contra.*

It is a well recognized principle of law that the vendor of real estate has a lien thereon for the purchase money, provided no security was taken. 4 Kent's Com. 151, *et seq.* 3d ed; 15 Vesey, jr., 329 to 350; 1 Johnson's Chan. Rep. 308; 10 Peters, 625—40. The principle is well settled that the assignee of a chose in action takes it subject to all the equities in the hands of the assignor. 2 Vernon, 691, 764; 1 P. Wms. 469; 1 Vesey, 123; 1 Vesey, jr. 249; 2 Johns. Chan. R. 443; 9 Wend. 80. It cannot, then, be doubted that the notes in the hands of James R. Creecy would operate as a lien on the land in the hands of L. H. Smith and William B. Creecy, or in the hands of purchasers from them with notice. Upon the second principle laid down, it is contended that the complainants' being the assignees of the notes with notice of the lien, hold them with the benefit of all the equity that James R. Creecy might have made use of.

It is further contended, that the Planters' Bank having negli-

gently permitted the sheriff to apply money to judgments junior to the date of the sale of said land, cannot now seek to wrest property from complainants, on which they have a specific lien. Such negligence as is charged in the bill would have permitted a junior judgment execution to take the property; see the opinion of Judge Trotter, in the case of J. J. Michie *v.* The Planters' Bank, January session, 1840; and surely the same rule would apply here with equal if not stronger force. It is further insisted, that the bank having two funds, and the complainant only one to resort to, the law will compel the bank to resort to that fund which will leave complainants free to resort to the other. Tuck. Com. 484, ed. of 1831. In every possible attitude in which we can view the case, it does appear a fit one for equitable interposition in behalf of complainants; and we therefore think the demurrer should be overruled.

A motion has been made to file an amended bill to bring James R. Creecy, a formal defendant, before the court. There can be no objection to the motion. Under the rule, it is granted of course.

The demurrer was overruled, James R. Creecy made a party, and the case set for final hearing on the bill, answer of the Planters' Bank, and *pro confesso* of the other defendants.

WILKINSON and MILES, for complainants.

An abstract is in the papers which was furnished when this cause was heretofore submitted on demurrer. I need only state in addition, that the deed from James R. Creecy to L. H. Smith and W. B. Creecy expressly reserves a lien on the lot for the payment of the two notes executed for the purchase money. The copy of the deed filed with the papers has been lost; but its contents are admitted by counsel for the defendants. The notes themselves, in express terms, retain a lien on the lot for their payment.

In support of several of the legal points presented by the pleadings, we refer the court to our brief now in the papers, prepared when this case was submitted on demurrer, and also to our brief in the case of the Planters' Bank *v.* E. J. Courtenay, now before the court.

We respectfully urge that the lien being retained on the face of the note, and expressly reserved in the deed, takes this case out of

the rule of the case in Bland's Reports. Graham *v.* McCampbell, 1 Meig's Rep. 52.

And upon well settled principles we contend that the bank cannot subject the lot in controversy to their judgment. Because recitals in a deed of land are evidence against the party making them, or any person claiming under him; they estop parties, and privies in blood, in estate and in law. See 9 Wend. Rep. 209, and authorities there cited.

Now if L. H. Smith and W. B. Creecy could not sell the lot in controversy to a purchaser without actual notice free from the incumbrance created by the recitals in the deed from James R. Creecy to them, by what species of logic can it be proved that the bank can subject it to her judgment? She certainly does not occupy a more favored position in law than a bona fide purchaser without actual notice. If he would take the lot charged with the incumbrance of the purchase money, how can the bank claim to sell it freed therefrom? We ask for a decree perpetuating the injunction, and ordering a sale of the lot for the payment of the amount due complainant.

S. S. BOYD for respondents.

The briefs and abstracts furnished by both parties in the argument of the demurrer in this case are again referred to. In addition, on behalf of the defendant, the Planters' Bank, we add the following expositions. On the demurrer the chancellor decided that the assignee of the note given for the purchase of land, could claim and enforce the vendor's lien. Since that decision was made, both the chancery court and the High Court of Errors and Appeals have decided differently. This was done in the case of Briggs, Lacoste & Co. *v.* Hill. The point being now settled, it will of course govern the final adjudication in this case, unless the facts vary the principle, as it was presented on the demurrer; and we are clear that they do not. There is no proof whatever of any one of the allegations in the bill, on which the complainants rely to raise an equity in their favor, and the answer denies them all. The allegations as to laches on the part of defendant are positively denied, the delay or stay of their legal process to enforce their judgment against other property is also denied. Creecy's insolvency

is not admitted, and the question whether the bank has another fund to look to, depends upon an uncertainty; nor is there any proof that any such fund exists.

It has been suggested that as the notes in question, and the deed show on their face that they were given for the purchase of land, and a lien was retained, this will strengthen the claim of the assignee. Such a fact certainly goes to show notice to all who might receive the notes, but that does not alter the power of the payee (the vendor,) to assign a personal privilege, which according to all our decisions is not assignable. It is a question of power and not of notice. We trust the injunction as to the bank will be dissolved.

THE CHANCELLOR.

The complainants are the assignees of certain promissory notes, given by Smith and Creecy to James R. Creecy, for the purchase of a town lot, No. 9, in the city of Yazoo. The notes, together with the deed from J. R. Creecy, retain, in express terms, a lien upon the lot so sold for the payment of the purchase money. The Planters' Bank having obtained a judgment against J. R. Creecy, prior to his sale, subsequently sued out an execution of *fieri facias*, and caused the same to be levied on the lot aforesaid. The complainants filed their bill to enjoin a sale under that judgment, alleging in substance that the bank might have had satisfaction out of other property of said Creecy; that property of his was taken and sold under junior judgments; and that the bank neglected to have the proceeds of such sales applied in satisfaction of its claim; that there is another fund in litigation in this court belonging to J. R. Creecy, to which the bank should be compelled to resort. The bill prays that the lien retained on the lot may be enforced in exclusion to the bank, and that the injunction may be made perpetual.

The answer denies that there has been any delay on the part of the bank in enforcing the collection of its claim, or that there has been any money collected on junior judgments against said Creecy, which should have been applied to that of the bank. It is admitted that there is another fund to which the bank would have a right to resort, but that that fund is in litigation, and it is doubtful

whether it can ever be made available.    There is no testimony in
the case.    The lien retained on the lot of land is in the nature of
an equitable mortgage, which the assignee might enforce in equity
against any subsequent incumbrancers  having notice of its exist-
ence.    I can have no doubt that it created such an interest as was
assignable in equity.    It is wholly different in its nature and inci-
dents from a vendor's equitable lien.    The one is created by virtue
of express contract; the other arises by implication, and is the
creature of abstract principles of equity.    But in this case the lien
of the bank is prior in date to that of the complainants, and look-
ing to the facts of the case as shown in the bill and answer I can
see nothing which would authorize him to say that that priority
has been waived or abandoned.

The bank does not appear to have done any thing to prejudice
or defraud the complainants of their rights.    A party can not be
divested of a prior lien unless there is some fraud or deception
in the transaction.    Trustees of Fraiser *v.* Centre, 1 McCord's
Ch. Rep. 278.    There seems to be no foundation whatever for the
claim made in the bill to compel the bank to resort to another
fund than the lot of land.

The marshalling of securities between different creditors or
incumbrancers, proceeds upon the principle that full justice may be
thus done to all parties without prejudice to any.    A court of equity
never compels a party having a prior lien upon two funds to resort
to one only, in order that a junior lien may be satisfied out of the
other, unless it appears that the one which is not affected by the
junior lien is fully adequate to the satisfaction of the prior lien,
and that the remedy for reaching it is prompt and efficient.    1
Story's Eq. 528.    The fund to which the complainants would
compel the bank to resort, is one depending upon the contingen-
cies of a law suit, and which, if it were even accessible to the
bank, is not shown to be sufficient for the satisfaction of its judg-
ment.    I think no case can be found where the holder of the old-
est lien has been compelled to resort to such remote contingencies
in favor of a junior incumbrancer.    I cannot, then, find any thing
in this case which entitles the complainants to retain the injunc-
tion heretofore granted against the Planters' Bank, and this dispo-
ses of the case so far as that defendant is concerned.

Briggs, Lacoste & Co. *v.* The Planters' Bank.

I have more difficulty about the order I should make as to the other defendants. The bill has been taken for confessed against Smith and Creecy, and so far as they have any interest in the town lot the complainants would seem to be entitled to their decree, to enforce the lien which they hold upon it, subject to the prior lien of the bank. If the lot will bring more money than will satisfy the judgment of the bank, the complainants will have a clear right to apply the surplus in satisfaction of their claim. In the sale to Smith and Creecy the lot appears to have been estimated at eight thousand dollars; the judgment of the bank is something over three thousand, which is subject to be discharged in its own issues; which are now only worth some thirty-eight or forty cents in the dollar. This leads me to suppose that there may be a surplus arising from the proceeds of the sale of the lot. The proper mode of retaining control over such probable surplus, with a view to its application, is the difficulty which presents itself. Ordinarily, where there are different incumbrances upon the same property, before the court, the course is to direct a sale, and have the money brought into court to be applied according to their respective priorities. But this takes place where both incumbrances are of a character which can only be enforced in this court. Here there are no obstacles at law in the way of the bank to the enforcement of its judgment. The bank asks nothing at the hands of the court, and the complainants show no equity against it, to restrain its action at law. It is obvious, then, that it would be most unjust to hold up the injunction against the bank until a sale could be effected under the complainants' bill, and especially as such sale must, under the statute, be made on a credit of not less than six months, when the bank is entitled to a sale at once, for cash. On the other hand, this court has no power to order the sheriff who may be charged with the collection of the judgment of the bank to bring any surplus that may come into his hands into this court. This would be in palpable conflict with the jurisdiction of the circuit court. The sheriff must act in obedience to the command of the process; which command is, that he return the money into that court, to which the application of it rightly belongs. Turner *v.* Fendall, 1 Cranch, 133; Jones *v.* Jones, 1 Bland's Ch. R. 461. In view of these difficulties, the

49*

question recurs, what form of decree will meet the demands of the case. There are many cases in which a court of equity, in order to dispose of the whole matter in controversy between all the parties, grants relief with qualifications and conditions. It seems to me that the proper decree here will be to dissolve the injunction against the bank, and to declare the complainants entitled to enforce their lien as against the defendants, Smith and Creecy, and to direct a sale of the lot in controversy, subject to the prior lien of the bank. Let the case be referred to the clerk to compute the amount due to the complainant, and report thereon; upon the coming in of which a decree may be drawn in conformity with the foregoing views, dismissing the bill as to the other defendants, against whom no relief is prayed. The defendants Smith and Creecy to pay costs.