JAMES C. & J. C. DENHAM, plaintiffs in error, *vs.* J. J WILLIAMS, defendant in error.

1. When the affidavit to foreclose a mortgage is made by an attorney, the recital in it that he is attorney-at-law for the mortgagee, is sufficient.

2. An affidavit to foreclose a mortgage on personal property, in Mitchell county, made before a Justice of the Inferior Court of Dougherty county, on the 24th day of October, 1866, and the order of foreclosure issued upon the affidavit by the Judge of the County-Court of Mitchell county, on 29th of October, 1866, is a legal proceeding.  At that time, the Justice of the Inferior Court had the right to administer the oath, and the County-Judge had the right to issue the order.

3. A mortgagee, whose mortgage covers property in Georgia and in Tennessee, can not be compelled by a junior mortgagee, whose mortgage covers part of the same property in Georgia, to go out of the jurisdiction of the Court into another State, and pursue his remedy first against the property in Tennessee.

4. When there is a dispute between mortgagor and mortgagee, as to their respective rights under the mortgage, and the mortgagee files his bill, and pending the proceeding in equity, they agree to refer the whole question in dispute to arbitration, and an award is rendered, and, by the consent of both parties, is made the judgment of the Court, the judgment is *prima facie* correct, and a junior mortgagee, not a party to the judgment, who alleges that it operates as a frand on him, will be held to proof of actual fraud.   When no fraudulent intent is shown, the simple fact that the senior mortgagee, whose mortgage covered a growing crop and other property, was required by the award and judgment to pay, and did pay, a certain sum of money to the mortgagor, is not sufficient evidence of fraud upon the rights of the junior mortgagee, whose mortgage covered only the growing crop, to justify the jury in finding for the junior mortgagee.

Claim.   Motion for new trial.   Decided by Judge CLARK. Baker Superior Court.   November Term, 1869.

Denham *vs.* Williams.

George P. Carmichael made to J. J. Williams, of Tennessee, a mortgage, beginning, " This Indenture, made and entered into this twenty-third day of July, 1806, between," etc., and was upon " the cotton crop and corn now growing on the plantation of said Carmichael, in said county of Mitchell, and supposed to be fifty bales of cotton, and two thousand bushels of corn, more or less," to secure Carmichael's note to Williams for $2,644, dated the 14th of May, 1866, and due one day thereafter. It was recorded on the first day of August, 1866.

On the 24th of October, 1866, Richard Hobbs made an affidavit, in Dougherty county, for its foreclosure, before James M. Mercer, a Justice of the Inferior Court of that county. So much of that affidavit as is pertinent was as follows: " Appeared, Richard Hobbs, one of the firm of Hines & Hobbs, said firm being composed of one Richard K. Hines and said Richard Hobbs, attorneys-at-law, for J. J. Williams, the mortgagee within named, and who is the owner both of said note and said mortgage securing said note, being duly sworn, saith, that George P. Carmichael," etc. This affidavit was presented to the Judge of the County Court of Mitchell County, and he ordered a *fi. fa.* to issue thereon, which *fi. fa.* the Clerk of his Court then and there issued. On the first of November, 1866, the Sheriff of Mitchell County levied this *fi. fa.* " on the cotton crop on the plantation cultivated by the defendant in this county, being fifty bales more or less, and one hundred bushels of corn more or less, on said plantation, property pointed out in *fi. fa.*"

James C. and J. C. Denham filed a claim to the property levied upon. On the trial, the plaintiff read in evidence the papers aforesaid, and examined the sheriff as a witness. He testified that J. J. Bradfield, as agent of claimants, had possession of said property when he levied on it; that there was in the lint-room, perhaps as much as sixteen bales of cotton unpacked, perhaps four thousand pounds in the seed, and the balance was unpicked in the field; sufficient in all to make fifty bales; that fall, cotton sold for from twenty to thirty cents per pound; there were about one hundred and fifty

bushels of corn, worth about $1 50 per bushel; that the plantation was leased for the year by claimants to Carmichael; he made the crop levied on, in 1866, as his own property; they had a lawsuit, in which J. J. Bradfield was appointed Receiver of the crop and property, and there was an arbitration of the cause, under which all the property was returned to claimants.

The claimants' attorneys moved to dismiss the levy upon the grounds stated in the motion for new trial, but the Court overruled the motion.

The claimants read in evidence a bill, and the proceedings under it, in their favor against Carmichael, in which they complained that in 1865, when they were strangers to him, they sold him certain stock and farming utensils, and leased him for three years said plantation, took from him, for the rent, a note due 26th December, 1866, for $1,866 in gold, or its equivalent in currency, and two notes due the 25th of December, 1866 and 1867, respectively, for 12,500 pounds of ginned and packed cotton, and, as security, a mortgage on said property sold, on the crops to be made, and on certain lands in Tennessee, which, Carmichael said, had no encumbrance but a mortgage for $500 or $600, in favor of one Johnson, etc.  They averred therein that one of the terms of the contract was, that if Carmichael failed to pay promptly, the lease should be rescinded.  They said, that so far from said land in Tennessee being only encumbered as aforesaid, it was covered by judgments and leins, amounting in the aggregate to near $1,800; that Carmichael had sold some of the cotton crop and some of the stock, had given said Williams said mortgage, and was so wasteful, improvident, intemperate, etc., that they were in danger of losing their said demands against him because he was insolvent.  The prayer was that a Receiver should be appointed, to take charge of and gather said crop, etc.

Said Bradfield was appointed Receiver, and as such took possession of said farm and crop.  In this state of facts, they and Carmichael agreed to submit the matter to the arbitrament and award of Fred. West, Esq.  He determined that

the said contract of sale and lease should be fully rescinded; that complainants deliver up the notes and mortgages; that Bradfield turn over all the property to complainants, in full discharge of their claims; and that complainants pay Carmichael $1,286 65, in full of his claims on them, and made other directions, as to payment of the Receiver, and the freedmen who worked the plantation.

At November Term, 1866, said award was made the judgment of the Superior Court. The attorneys of J. J. Williams objected to this being done, upon the ground that J. J. Williams was interested; but the Court said, Williams was no party to the bill, and therefore would not hear his attorneys to object.

They then examined BRADFIELD, who testified that he had held said property as such Receiver, till the award was made the judgment of the Court, and then he turned it over to claimants; that there was very little corn, about ten hogs, eighteen cows, and thirteen mules and horses; that the claimants gathered thirty-two bales of cotton of said crop; that Carmichael had, before the litigation, sold ten bales; that he and Mr. Davis were present at the arbitration as counsel for claimants, but Carmichael would have no attorney, though the Denhams offered to pay his attorney's fees; that the property turned over by the award was put at a much higher price than it would have sold for, or was worth.

J. DENHAM testified: That said property was turned over to them at much more than its value; that the perishable property passed over to them by the Receiver was worth $1,500 or $2,000 less than similar property sold by them to Carmichael, who was to pay them $1,000 in gold therefor; the cotton turned out to be thirty-four bales when they took charge of the farm, *i. e.,* there was enough in lint and seed to make twelve bales, and the balance was in the fields; that it was worth from $\frac{1}{4}$ to $\frac{1}{3}$ of a cent per pound to get it to market, and it brought a little over $100 per bale; that they took the property in full of their demands against Carmichael, and paid him said $1,286 65, by crediting his note

for that amount given to them for money and supplies loaned him through the year 1866, with which to make said crop.

They read the testimony of one Mansfield, who said, he took possession of said plantation, after said judgment, on the 4th of November, 1866, used all diligence to get out the crop; that there were but thirty-two bales of cotton, weighing about five hundred pounds each; and that he went there and so acted as the agent of the Denhams.

The evidence being closed, the claimants' attorneys requested the Court to charge the jury as follows:

"1st. That to justify the finding of this property subject, they must be satisfied from the proof that the title to the property is in Carmichael. That if they are satisfied that the title of the property is in the claimants, then it cannot be subject. 2d. It was competent for Carmichael and the Denhams to submit their claims to arbitration, and the award rendered in the case ought to be respected and carried out, so far as Denham and Carmichael are concerned. 3d. That the award cannot be attacked, except for fraud; and if the jury are satisfied that it is fair, and by it the Denhams have the property awarded to them, then their title is good, and cannot be subjected to this *fi. fa.* 4th. That the award thus ended the contract, and the whole provision of the award ought to be respected. That it is not only binding upon the parties thereto, but upon all privies, and this plaintiff, unless it is attacked for fraud. 5th. That if the award does conclude the plaintiff, he cannot take any advantage under some of its terms, but must take all the provisions. 6th. That if the award is not to be regarded in this case, then these parties must stand by their rights under their respective mortgages; and if the jury is satisfied that the Denhams had the old mortgage, and that by a settlement justly made with Carmichael they got the title to the property, then the property is not subject. 7th. It was not necessary for the Denhams to foreclose their mortgages; they had the right either to foreclose or submit the same to arbitration, and if this was done, and they thus got the title to the property, then it is not subject to the plaintiff's mortgage, as it was junior."

The Court refused to give said 3d, 4th and 7th requests. He charged as follows : " The award of the arbitrators and the surrender of the property under it, binds the Denhams and Carmichael, and is a foreclosure of the mortgage held by Denham on Carmichael, and if the mortgage lien of Denham is older than the mortgage of Williams, then the award of foreclosure under it of Denham's mortgage is a bar to Williams' proceedings against the same property, unless it appears that there is in the award, or in the legal assertion of it, a fraud on his rights, or that his rights are injuriously affected.

2d. Williams had the right to compel the Denhams to go to Tennessee and foreclose their lien on the Tennessee land before they could enforce it on the property in Mitchell county.   And if they failed to do so, and gave up their lien to Carmichael, whether on their own motion or in obedience to the award of the arbitrators, without the consent of Williams, then, so far as Williams is concerned, the claim of $4,000 is legally extinguished and could not be enforced against the cotton crop of 1866, in Mitchell county, unless the Denhams show that the land in Tennessee is valueless, or that Carmichael had not title to it.

3d. If the claim of $4,000 is extinguished, so far as Williams is concerned, then the only claims that the Denhams could enforce against the Mitchell county property was the three notes, for twenty-five bales of cotton each, and if there was property enough to which the lien attached to secure the payment of these notes, independent of the cotton crop of 1866, the Denhams could not go upon the cotton crop until they had exhausted all the other property in their mortgage.   If there was ample property beside the cotton crop of 1866 to pay these three notes, then the cotton crop of 1866 is subject to the mortgage lien of Williams, unincumbered by Denham's lien.

4th. The Denhams are bound by the award, and if the arbitrator found a balance of $1,250 00, or other sum, due from the Denhams to Carmichael, and that amount was paid to Carmichael, then the payment was in fraud of the rights

of Williams to that extent, whether they paid the amount to Carmichael or credited it on the other notes due to themselves not secured by their mortgage.

If the lien on the Tennessee land was given up without the consent of Williams, and there is no proof that the lands were valueless, or the title worthless, and there was plenty of other property in Mitchell county to pay the three cotton notes, independent of the cotton crop of 1866, then Williams' mortgage on the cotton crop of 1866 is unaffected, and the property is subject to the *fi. fa.*

If there was not property enough, independent of the cotton crop, to pay the three notes, but it took part of the cotton added to the other property to pay off these notes, and there was left a balance due Carmichael of $1,250 00, or other sum, and that amount was paid to Carmichael or credited on other notes of Carmichael, then the cotton is subject to the *fi. fa.* for $1,250 and interest."

The jury found the whole fifty bales of cotton subject to the *fi. fa.* The claimants' attorneys moved for a new trial upon the grounds: 1st. That the verdict was contrary to evidence in that they found fifty bales subject when claimants had had but thirty bales. 2d. The verdict was contrary to the charge of the Court contained in said 6th request. 3d. and 4th. It is against the weight of the evidence and the law. 5th. The Court erred in not giving in charge said 3d, 4th and 7th requests. 6th Because the Court erred in refusing to dismiss the levy for uncertainty. 7th. Because at the date of said contract there could not be a mortgage on a growing crop. Because the Court erred in overruling the motion to dismiss the levy, because Hobbs did not show in said affidavit that Hines & Hobbs were the attorneys of or agents of Williams, and because the mortgage was dated in 1806, and was upon its face barred, and because the affidavit was taken before a Justice of the Inferior Court of Dougherty county, and the order for *fi. fa.* was by the Judge of the County-Court of Mitchell county.

The Court refused the new trial and error is assigned thereupon on each of said grounds.

Denham *vs.* Williams.

Vason & Davis, for plaintiffs in error, said the Justice of the Inferior Court could not *then* administer said affidavit. Act 17th March, 1866. *Gresham vs. De Launey*, 34*th Ga. R.*, 442. The second item of the charge is erroneous. Code, section 1939. Evertson vs. Booth, 19th John's R., 493. *Knowles vs. Lawton*, 18*th Ga. R.*, 476; cited no authorities upon the other points.

Hines & Hobbs, for defendant in error, replied the affidavit did show sufficiently they were attorneys of Williams. Code, section 3895. Besides this parties cannot raise this point. Code, sections 3899, 3903. The Justice of the Inferior Court could *then* administer the affidavit. Code, sections 3895, 274, 275, 281, 194, (5 paragraph,) 282, 300, 311, 313, 287, (paragraph 9) 3875; *Collins vs. Rutherford*, 38*th Ga. R.*, 29. Judgments bind only parties and privies. Old Code, sections 4151,3496. The 2d and 3d charges were right. Old Code, section 3092, etc.

Brown, C. J.

1. The recital in the affidavit of the attorney in this case, that he was, with his partner, the attorney of the mortgagee, is sufficient compliance with section 3895 of the Code, and the exception to the affidavit was properly overruled.

2. On the 24th day of October, 1866, a Justice of the Inferior Court had authority to administer an oath to foreclose a mortgage on personal property, and on the 29th day of the same month the Judge of the County-Court had authority to issue the order of foreclosure. Such an order of foreclosure issued by the Judge of the County-Court of Mitchell county, upon an affidavit made by the attorney of the mortgagee before a Justice of the Inferior Court of Dougherty county, was a legal proceeding.

3. We think the charge of the Court that Williams had the right to compel the Denhams to go to Tennessee and foreclose their lien on the Tennessee land before they could enforce it on the property in Mitchell, was erroneous. We do

not understand the rule to be, that a creditor who has a lien on two funds, or two parcels of property, one within the jurisdiction of the Court, and the other beyond its jurisdiction, will be compelled, in favor of a younger lien which covers only the property in this State, to go into another jurisdiction and pursue his remedy there, before he can proceed against the property in this State. The rule is correctly laid down in section 1939 of the Revised Code, in these words: "As among themselves creditors must so prosecute their rights as not unnecessarily to jeopard the rights of others; hence a creditor having a lien on two funds of the debtor *equally accessible* to him, will be compelled to pursue the one on which other creditors have no lien."

It cannot be said that the fund or land in Tennessee which was shown to be covered with liens there, is equally as accessible to the claimants as the property in Mitchell county. It follows, therefore, that they should not be driven out of the State to seek their rights in another jurisdiction, when they have a lien on sufficient property in this State to satisfy their debt. If Williams wished to avail himself of the benefit of the lien on the Tennessee lands, he should, while the mortgage was still in force, have taken the proper steps to pay off the mortgage to the claimants, and have taken an assignment and the control of it, for his own benefit. In this way he might have acquired the right to go upon the Tennessee lands at his own expense, but he had no right to compel the holders of the older mortgage to go there at their expense for his benefit.

4. The award made by the arbitrator in this case was not attached for fraud, accident, or mistake, or for any other legal reason. It was made the judgment of the Court, and must be held to be *prima facie* correct, and if the junior mortgagee claims that it operates as a fraud upon his rights, he will be held to proof of actual fraud, the presumption being in favor of the judgment. If no fraudulent intent is shown, the simple fact that the senior mortgagee, whose mortgage covered the growing crop and other property, and was to secure payment of the purchase-money for the stock, etc.,

on the plantation, as well as the annual rents, was required by the award and judgment of the Court to pay, and did pay, a certain sum of money to the mortgagor, is no sufficient evidence of fraud upon the rights of the junior mortgagee whose mortgage covered only the growing crop, to justify the jury in finding for the junior mortgagee, the more especially when the payment to the mortgagor was made by allowing him credit on a note given for money loaned him by the senior mortgagee to purchase supplies to make the very crop which is covered by both mortgages.

Judgment reversed.