## Block, Oppenheimer & Co. v. L. J. Latham.

(Case No. 2045.)

1. Landlord's lien.— The landlord's lien attaches upon whatever property the lessee, or his vendee who has bought it not in the ordinary course of business, has on the rented premises when the warrant issues and is levied, and this without reference to the time when the debt for rent accrued.

2. Same — Collateral security.— The acceptance of a collateral promise of one who purchases the stock of goods of the tenant, to pay the rent, will not of itself operate as a release of the landlord's lien.

3. Landlord's lien — Marshaling assets.— A voluntary written obligation, executed by a purchaser from the tenant, on a consideration moving from the tenant and not from the landlord, whereby the obligor binds himself to pay for the tenant the rent, does not operate a release of the landlord's lien, the enforcement of which is sought against goods purchased, not in the ordinary course of business, and found and seized for rent on the premises. Nor in such a case can the landlord who has seized the goods be compelled by other attaching creditors, who attack the purchase of the goods as fraudulent, to resort first to the voluntary promise of the purchasers to pay rent, before seeking satisfaction out of the goods themselves, seized under distress warrant.

4. Cases cited and approved.— Cannon v. Kreipe, 14 Kans., 326; Calloway v. The Bank, 54 Ga., 573; Denham v. Williams, 39 Ga., 312; Jervis v. Smith, 7 Abb. Pr. (N. S.), 221, cited and approved.

Appeal from Harris.   Tried below before the Hon. James Masterson.

The statement of the case approved by both parties is adopted.

L. J. Latham filed this suit against J. S. Mills, for $2,700 rent, claimed to be due him for a building in Houston, Texas; alleging that on or about the 1st day of June, 1878, he rented the building to Mills for so long as might be agreeable to both parties, and that Mills, in consideration thereof, promised to pay plaintiff at the end of each month, during the existence of the lease, the sum of $150 for the rent of the building; that under said lease Mills occupied the building from June 1, 1878, to November 2, 1883, and paid all rents up to May 1, 1882. He also alleged the procurement by him of a distress warrant on the 2d of November, 1883, and the levy thereof on the same day by the sheriff of Harris county, on the property in the building, upon which the appellee claimed to hold a valid preference landlord's lien to secure the rent. Under order of the court the property was sold, and the proceeds held in the sheriff's hands.

Before suing out of the distress warrant, appellants (who, except Fant, the sheriff, were creditors of the tenant Mills) had sued out writs of attachment against Mills, and caused the same to be levied

upon the property in the store, and it was in the hands of the sheriff under writs when the distress warrant of appellee was levied. These attaching creditors and the sheriff were made parties defendant. They appeared and set up their respective rights as attaching creditors of Mills, and also alleged that about the 1st of November, 1883, their co-defendant, Mills, for an alleged consideration of $4,523, sold his entire stock of goods, furniture, fixtures, etc., in the building to Sweeney & Coombs; and that, as part of the consideration for the sale to them by Mills, Sweeney & Coombs, on or about November 1, 1883, executed and delivered to said L. J. Latham their obligation in writing to pay him the sum of $2,523, the same being the rent due or to become due Latham for the building, and that Latham accepted the same as security to him for his rent, or in lieu and payment of his claim against Mills therefor, and still held the same, whereby he released his lien, if any he had, upon the property of said Mills. They further alleged that Sweeney & Coombs were solvent and able to pay the obligation, and that they bought the property in fraud of defendants' rights, well knowing or having reason to know that Mills was making the sale to hinder, delay and defraud his creditors, and that the rent, if any was owing by Mills, was then due and should have been paid by Sweeney & Coombs; but they, in fraud of defendants, advised and procured the distress warrant to be sued out by plaintiff and assented thereto. They prayed that Sweeney & Coombs should be made parties to the suit, and that Latham be required to resort first to his claim against Sweeney & Coombs before he be allowed to have recourse to the proceeds of sale of the attached property, and if not, then that they have judgment subrogating them to the rights of Latham against Sweeney & Coombs, by reason of the written obligation, and for judgment against Sweeney & Coombs thereon. They also, by trial amendment, alleged that on April 17, 1884, in the district court of Harris county, in the cause of Sweeney & Coombs v. Block, Oppenheimer & Co. and Halff, Wiess & Co. and J. J. Fant, sheriff of Harris county, for damages for levying the writ of attachment of said defendants upon the same stock of goods levied on by the plaintiff in the cause, and for which Sweeney & Coombs executed their obligation to L. J. Latham, a judgment was rendered giving to Sweeney & Coombs the sum of $7,728.32, or thereabouts, for value of the goods, etc.; and if the sheriff should be compelled to pay said judgment, he will compel these defendants to reimburse him upon the indemnity bond which they had severally executed to him; and unless, therefore, said Sweeney & Coombs be compelled to pay

their obligation held by Latham, they would recover by amount of said obligation more than in any event they could be entitled to — no allowance having been made for rent lien in the said cause of Sweeney & Coombs v. Block, Oppenheimer *et al.*, and that these facts could not have been known to the defendants until the trial of the cause.

On May 14, 1884, all parties appearing except J. S. Mills, judgment was rendered striking out so much of defendants' pleadings as sought to make Sweeney & Coombs parties to the cause, and in favor of appellee Latham against J. S. Mills for $2,736.33, establishing and foreclosing a lien therefor in favor of Latham, and directing the payment of the same by the sheriff out of the funds in his hands in preference to the claims of all the other defendants. It was also decreed that upon the amount of the debt, interest and costs being fully paid to Latham out of the fund, the defendants (except Mills) " will be and are hereby subrogated to such rights, and such rights only, as the plaintiff may then have or be entitled to under said obligation of Sweeney & Coombs."

Plaintiff Latham testified that, on the day of the sale by Mills to Sweeney & Coombs, he received from the latter their written obligation, which he produced in court, as follows:

" For value received, we do hereby bind and obligate ourselves to pay L. J. Latham the sum of twenty-five hundred and twenty-three . dollars now owing said Latham by said J. S. Mills; and we agree to pay said indebtedness to said Latham as the same matures against said J. S. Mills.   This November 1, 1883.

(Signed)                    " SWEENEY & COOMBS."

Latham testified: "I put the obligation in my desk drawer and have had it ever since.   I never returned it to Sweeney & Coombs, nor declined to receive it."   He also said that he did not take it in lieu or stead of his claim against Mills as landlord, but took it and held it as additional security for his rent, to be enforced, if from any cause he had failed to make the money out of Mills' property.

*Hutcheson & Carrington* and *C. Anson Jones*, for appellant, that appellee had lost his preferred lien, cited: Bassett v. Proetzel, 53 Tex., 569; Barron v. Thompson, 54 Tex., 235.

That the lien was abandoned by taking the new security, they cited: Faver v. Robinson, 46 Tex., 204; Parker County v. Sewell, 24 Tex., 238.

That plaintiff should first exhaust the security he held from Sweeney & Coombs, they cited: Evertson v. Booth, 19 Johns., 486–

492; White & Tudor, Leading Cases in Eq., vol. 2, par. 1, p. 259; id., 314, 316.

*Jones & Garnett*, for appellee, that Sweeney & Coombs were not proper parties to the suit, cited: Hardy *v.* De Leon, 5 Tex., 232; Matossy *v.* Frosh, 9 Tex., 612; Tulane *v.* McKee, 10 Tex., 338; Lewin *v.* Houston, 8 Tex., 96.

STAYTON, ASSOCIATE JUSTICE.— It mattters not that Mills may have bought some or all of the goods seized under the distress warrant sued out by Latham, after a part of the rent became due; for his lien attached upon whatever property Mills or his vendees had upon the rented property, the latter not being purchasers in the ordinary course of business, nor the property removed from the rented premises, and so for the payment of all rent due without reference to the time it accrued.

The court, therefore, did not err in rejecting the testimony of the witness Kiam.

There is nothing in the record to show that Latham had abandoned his landlord's lien.

The acceptance of the collateral promise of Sweeney & Coombs to pay the rent due by Mills would not, of itself, operate as a release of the lien held by Latham.

The evidence shows very clearly that Latham received the promise of Sweeney & Coombs as an additional security for the rent due to him.

The other assignments involve the question whether the appellants had the right to delay Latham in the recovery of the money due to him for rent out of the proceeds of the goods seized, which were practically in the hands of the court, and to force him first to resort to Sweeney & Coombs on their promise to pay the rent.

The petition of Latham was filed on December 7, 1883, and, so far as the record shows, no effort was made by the appellants to obtain this character of relief until the day before the trial; and if, upon this ground alone, the court had declined to entertain the prayer for such relief, if under the facts it could have been given, there would have been no error. The trial occurred on May 14, 1884.

As between Mills and Sweeney & Coombs, the title to the property seized passed to the latter, and Latham had a superior lien upon it whether that sale was valid against other creditors or not.

The appellants have attachment liens, valid only in the event the sale from Mills to Sweeney & Coombs was fraudulent.

The instrument executed to Latham was not upon valuable consideration running from him to its makers, and hence he is not, in reference thereto, to be treated as he would be entitled to be were there a consideration other than the conveyance from Mills to Sweeney & Coombs to support the promise made by the latter.

Latham, then, by virtue of his superior lien, has a claim on the fund in court for the payment of his debt, and he has also the claim on Sweeney & Coombs, based on their promise made to him, which the appellants aver was but a part of a transaction through which Mills transferred his property in fraud of their rights as his creditors.

Under such a state of facts, can a court of equity marshal the securities held by Latham?

The rule in reference to this matter is thus well stated by the supreme judicial court of New Hampshire:  " Where one creditor has a lien upon two funds, and another creditor has a lien upon one only of these funds subject to the lien of the former, a court of equity will often compel the former to exhaust the fund upon which he only has a lien, before allowing him to satisfy any part of his claim out of the other fund. . . . But these principles can apply only where the creditor's right to resort to both funds is clear, and not seriously disputed, and where the remedies available for reaching and applying the funds are reasonably prompt and efficient."   Kidder v. Page, 48 N. H., 382.

This rule is reasonable and is well sustained by authority.   Cannon v. Kreipe, 14 Kan., 326; Calloway v. The Bank, 54 Ga., 573; Denham v. Williams, 39 Ga., 312; Briggs v. Planters' Bank, 1 Freem. Ch. (Miss.), 584; Jervis v. Smith, 7 Abb. Pr., 221; Wolf v. Smith, 36 Iowa, 457; Pomeroy's Eq., 1414; Story's Eq., 642, 645.

Under the facts before us, if Latham were compelled to resort first to his claim against Sweeney & Coombs, he would necessarily be delayed in the collection of his debt; for it is obvious that, if at all, he could enforce his claim against them only through an action which would probably be resisted, whereas, in the present action, there is a fund in court out of which he may be at once paid.

This delay, if he could be compelled to undergo it, has been increased by the failure of the appellants, who were originally made parties to the suit, promptly to ask the relief which they now seek.

If the sale made by Mills to Sweeney & Coombs was, as alleged by appellants, made with intent to defraud creditors, that matter would, doubtless, be urged by Sweeney & Coombs, if suit was brought against them on their promise made to Latham, and especially so

if in the other proceedings the sale be set aside by creditors for fraud; and although pleaded by a party to the fraud it would be a good defense to the action, for under the facts Latham could no more enforce the promise made to him directly than could he had the promise been made to Mills, and by him assigned to Latham. He would not be entitled to such protection as would be a *bona fide* holder of negotiable paper executed under circumstances similar to those charged by appellants to have existed. Nellis *v.* Clark, 20 Wend., 24; S. C., 4 Hill, 424; Briggs *v.* Merrill, 58 Barb., 389; Dyer *v.* Homer, 39 Mass. (22 Pick.), 253; Bailey *v.* Foster, 26 Mass. (9 Pick.), 140; Merrick *v.* Butler, 2 Lansing, 105; Ager *v.* Duncan, 50 Cal., 327; Goudy *v.* Gebhart, 1 Ohio St., 263; Powell *v.* Inman, 7 Jones, 28; Bump on Fraudulent Conveyances, 454.

The answer of the appellants showing that Sweeney & Coombs have a defense which they could urge against their promise to Latham should he seek to enforce it, a court of equity would not compel him to resort to a fund, the recovery of which may be defeated.

The facts alleged by appellants which make the promise to Latham illegal may not exist; but in this case, in which the appellants are seeking to have securities marshaled, the facts on which they base their claim as to them must be taken to be true.

There is no error in the judgment, and it is affirmed.

AFFIRMED.

[Opinion delivered February 27, 1885.]