## J. M. DAVIS ET AL. v. STARK WASHINGTON ET AL.

### Decided January 5, 1898.

**1. Landlord's Lien—Property of Third Parties—Statute.**

Our statutes (Revised Statutes, articles 3235, 3252) give no lien to the landlord except upon the property of the tenant on the rented premises. The fact that chattels of others are on the premises will not subject them to the lien for rent.

**2. Same—Common Law.**

The common law rule attaching a lien upon property of third persons found on the premises at the time of the levy of a distress warrant is not recognized in this State.

**3. Same—Estoppel.**

Third parties who intrusted chattels to the tenant for use in his business do not thereby become estopped from disputing the landlord's lien thereon where he is not shown to have been deceived or led into renting the premises by any act or declaration of such owners.

APPEAL from Travis. Tried below before Hon. R. E. BROOKS.

*West & Cochran,* for appellants.

*John Dowell,* for appellees.

COLLARD, ASSOCIATE JUSTICE.—This suit was instituted by Stark Washington and L. W. Costley on the 14th of May, 1896, in the District Court of Travis County, to recover from appellant, J. M. Davis, constable, and appellants A. S. Walker, Jr., and Joe Koen, sureties on his (Davis') official bond as constable, for the sum of $1224.50, the alleged market value of certain bar fixtures, wares, goods, frames, partitions, and other property seized by Constable Davis, by virtue of a distress warrant in a cause in justice court of Justice Johnson, Precinct No. 3 of Travis County, entitled R. H. Smith v. Solon Costley, which property was levied upon as the property of defendant, Solon Costley, appellees alleging that they were the owners of the property, and that it was not subject to the distress warrant proceeding.

Appellants Davis, Walker, and Koen answered, setting up the proceedings in the justice court and that the distress warrant was levied on the property at the instance of R. H. Smith, in order to satisfy his statutory landlord's lien for the rent due by Solon Costley for certain premises known as No. 325 East Sixth Street, in the city of Austin, owned by Smith. Davis set up that before the levy he obtained an indemnity bond signed by R. H. Smith, C. W. Daniel, and D. B. Gracy, and asked that they be made parties defendant. Smith, Daniel, and Gracy ac-

cepted and adopted the answer of their codefendant Davis: first, that Smith's claim for rent was superior to any interest or right of plaintiffs Washington and Costley in the property levied on by the constable, Davis; and secondly, that Washington and Costley, plaintiffs, were estopped from claiming any interest in the property.

December 10, 1896, the court sustained plaintiffs' demurrers to so much of defendants' answer setting up that Smith had a landlord's lien upon the property. The case was tried by a jury, and on the 14th day of December, 1896, a verdict was returned in favor of plaintiffs for $528 against Davis, Walker, and Koen, and in favor of Davis and his sureties against R. H. Smith and the sureties of the distress warrant bond, Daniel and Gracy, for a like sum, $528, and in favor of Daniel and Gracy in a like sum against R. H. Smith, and judgment was rendered accordingly, from which all the defendants have appealed.

Appellants rely upon two points for a reversal: First, error of the court in striking out paragraph 3 of original answer as amended by trial amendment; appellants contending that under the averments of the answer as amended, R. H. Smith, by virtue of his being the landlord of the premises, had a lien on the goods levied upon, to satisfy the amount due him as rent for the premises, the property being on the premises during the time and long prior to the time when the rent became due. Second, that the trial court erred in not submitting to the jury under the evidence the issue whether or not plaintiffs were estopped by their own conduct from claiming the damages sued for.

Appellants have, in their excellent brief, relieved the court of finding the facts supporting the judgment, conceding that they are sufficient to support the judgment, except upon the issue of estoppel set up by them, which they say ought to have been submitted to the jury in the charge, and that there was error in the failure of the court to submit that issue under the evidence. The facts proved on this issue are as follows:

John T. Rankin and Ed Hornsby purchased the chattels levied upon by the constable from Brunswick-Balke-Collender Company, about the 28th of September, 1893. They desired to go into the saloon business, and bought the property for that purpose in San Antonio and brought it to Austin. Rankin subsequently conveyed his interest in the property and the saloon business to Joe Jones. Afterwards Rankin bought out Jones and Hornsby, becoming the sole owner. Rankin, in the original purchase from the Brunswick-Balke-Collender Company, executed to it a chattel mortgage on the property to secure $504.08 due the company, which was filed for record in Travis County chattel mortgage records October 23, 1893, the chattel mortgage registration statutes being in all respects complied with.

There was read in evidence a bill of sale by Rankin to Washington & Costley Bros. and Berry & Moore Bros. of the property described in plaintiffs' petition, and other property, as being situated in the two-story rock building, No. 325 East Sixth Street, belonging to R. H. Smith and

occupied by Rankin as a saloon keeper, which bill of sale was duly recorded July 23, 1894, in county records of Travis County. The firm of Washington & Costley Bros. consisted of Stark Washington, J. L. Costley, and Lee Costley. The firm of Berry & Moore Bros. consisted of George Berry, Bell Moore, and J. B. Moore.

On December 19, 1895, Washington & Costley Bros. and Berry & Moore Bros., by bill of sale, conveyed to Stark Washington and L. W. Costley the property—the bar fixtures, furniture, etc.—bought by them of John T. Rankin. This instrument is not shown to have been put on record. The distress warrant was issued and levied, as alleged by plaintiffs, at the instance of Smith, for rent due on account of Solon Costley to him, for the premises in which the goods in question were situated. The levy was made January 29, 1896, in suit of Smith v. Solon Costley; and the goods so levied upon were sold and the proceeds appropriated by Smith, pursuant to his judgment against Solon Costley in the suit for rent. Defendant Smith by written lease, of date October, 1893, leased to Hornsby and Rankin the first floor of the house No. 325 East Sixth Street, for one year from October 1, 1893, to September 30, 1894, at $100 per month rent. On the 21st day of July, 1894, R. H. Smith leased the same property for one year, commencing October 1, 1894, and ending September 30, 1895, at $75 per month, to T. A. Moore and Albert Costley. These last named tenants were not members of the firm of Washington & Costley Bros. nor of the firm of Berry & Moore Bros.

By the testimony of "Tom Moore," the T. A. Moore named in the lease to T. A. Moore and Albert Costley, it appears that about the date of the sale from Rankin to Berry & Moore Bros. and Washington & Costley Bros. the two firms turned over to witness T. A. Moore and Albert Costley the business for the purpose of making a living out of it on their own responsibility. The witness says: "Thereupon, Albert Costley and myself rented the property from R. H. Smith on our own account. The firm of Washington & Costley Bros. consisted of Stark Washington, J. L. Costley, and Lee Costley; the firm of Berry and Moore Bros. consisted of George Berry, Bell Moore, and John B. Moore. There was no understanding between any of these parties and Albert Costley and myself that they were to be interested in any way in this business. I am a brother of Bell and John Moore, and Albert Costley is a brother of J. L. and Lee Costley. While I was connected with the business the rent was paid. I finally quit and Albert took charge until some time about March, 1895, when his brother Solon came in. I never owned this property myself, nor had I any interest in it. I merely stepped out and was not paid anything for my interest in the business."

Solon Costley testified in substance as Tom Moore, and in addition said: "I never told R. H. Smith at any time that the saloon fixtures and furniture belonged to me or that they belonged to my brother Albert. On the contrary, when I first went into the saloon business and paid the rent, I told Smith that I did not own the furniture and fixtures in the saloon, but that they were the property of Washington & Costley Bros.

and Berry & Moore Bros. I refer to the property that the distress warrant was run on. I told Smith this twice, both times before July, 1895. Stark Washington and L. W. Costley both knew of my connection with the business, and both firms knew that I was running the business, and knew that the property was in Smith's store. I did not pay the amount of rental due on the property. I think that the amount due was about $175. I did not have any interest whatever in the furniture, nor did Albert. * * * The plaintiffs knew of my connection with the business."

Albert Costley testified: "Tom Moore and myself were put in possession of this property by Washington & Costley Bros. and Berry & Moore Bros. for the purpose of running it for them. We worked for them and they got the benefits of the business. I never told R. H. Smith that I owned this property. My understanding was that I was working for the parties who owned the saloon fixtures and furniture; and while Tom Moore and myself, and afterwards I, paid the rent, that we paid it on their account. The two firms turned the business over to Tom Moore and myself, and we ran it for about nine months." ,

Lee Costley testified in substance as did T. A. Moore in reference to the two firms being in nowise interested in the saloon business, and further stated that they never rented the building from Smith, nor did they tell him that they would pay any rent; that they never employed Albert Costley to run the saloon business for them. "The boys were out of a job and we wanted to help them along. We knew that the property was situated in Smith's building."

Appellee Stark Washington testified: "In February, 1895, the firm of Washington & Costley Bros. dissolved. In the dissolution, this property fell to myself and L. W. Costley. I never had any conversation with R. H. Smith in reference to the property, nor did I know anything about the condition of the rent. Tom Moore and Albert Costley, and afterwards Albert and Solon Costley, and afterwards Solon, used the property with our consent. The understanding was that they were to pay the rent. I never had any conversation with Mr. Smith about the matter. We never received any proceeds from the business. We never employed Albert, Solon, or Tom to run the business for us."

L. W. Costley testified: That the two firms bought the property from Rankin and let Albert Costley and Tom Moore have it to help the boys along. "We were not running the business ourselves; had nothing whatever to do with it. I never had any conversation with Mr. Smith in reference to this property until two or three days before the suit in the justice court was brought, about the middle of October, 1895. I knew, however, that the property was in Mr. Smith's house. Solon and Albert Costley are both brothers of mine, and nephews of Stark Washington. None of us ever put Albert Costley in the business to represent us, the owners of it. He was put there in connection with Tom Moore, who is a brother of Bell and John Moore, to run the business on their own hook.

Stark Washington and myself stood good for about $250 worth of whisky bought from McDannell, but we never paid these boys' bills. All we did was to let them have the furniture and fixtures to run the business."

Appellant R. H. Smith testified: "The business of leasing this property was in the hands of Bergen, Daniel & Gracy, but Mr. C. W. Daniel of that firm had particular charge of leasing this building. About the 1st of May, 1895, Mr. Daniel being absent, I found out that the tenants were somewhat backward on the rent at that time. I went to see Albert Costley, who was in charge of the saloon, and called his attention to this fact, and inquired of him who owned the property, meaning the saloon fixtures and furniture, the value of which is sued for in this case. Albert stated that he and Tom Moore had originally bought the property, but that he and his brother Solon, who had taken Moore's place, still owed about $150 on the same. That outside of that there was no other claim. I made this inquiry because my rent had not been paid regularly, and I expected to look to the property in the building for my rent. Solon was not running the saloon then. I understood that he had gone to Hot Springs. Upon his return, some time in July, 1895, I think, I made the same inquiry of him, and he told me that he owned the property and that the only indebtedness against it was $165 due for purchase money. I was not aware that Washington & Costley Bros. or Berry & Moore Bros. were claiming any interest in this property until after the distress warrant proceedings in the justice court were begun. None of the members of these two firms nor the plaintiffs in this case ever notified me that they claimed any title to this property. Neither of these firms nor the plaintiffs ever rented the building or promised to pay any rent."

Plaintiffs read in evidence occupation tax receipt of Moore & Costley, issued by the tax collector of Travis County, evidencing the right of Albert Costley and T. A. Moore to carry on a retail liquor business in Austin, Texas, which expired September 30, 1895. Plaintiffs also read in evidence the liquor dealers' bond of T. A. Moore and Albert Costley, dated October 6, 1894, in usual form.

From the foregoing testimony we conclude that neither Stark Washington nor L. W. Costley represented to Smith or said anything to him or his agents that would authorize him to believe that Solon Costley was the owner of the chattels taken by his, Smith's, distress warrant, nor do we find that they said anything calculated to mislead him or his agents as to any such ownership by Solon Costley or Albert Costley and T. A. Moore, or either of them. The evidence does not show that Smith was misled or relied upon any such ownership in Solon Costley, Albert Costley, or T. A. Moore. Neither does the evidence show that Smith acted upon the belief of such ownership, nor that he was deceived by plaintiffs in any respect as to the true ownership of the property taken by his distress warrant. It was never the property of the tenant, Solon Costley, and plaintiffs did nothing to induce him to believe that it was his property, or that it would be liable for the rent under his tenancy or under

the tenancy of Albert Costley and T. A. Moore, neither of whom are shown to have any authority to bind plaintiffs as to the ownership of the property. Other facts found by this court have been stated.

*Opinion.*—There was no error in sustaining plaintiffs' exceptions to the third paragraph of the answer of defendants as amended by trial amendment.

The fact that chattels are on the rented premises at the time of the lease, and that they were there long before the lease, will not of itself secure to the landlord a lien upon them for rent. No lien is given by the statute except upon the property of the tenant on the rented premises. Rev. Stats. 1879, arts. 3107, 3122a; Rev. Stats. 1895, arts. 3235, 3251.

The case of Lehman v. Stone, 4 Willson Civil Cases, 182, cited by appellants, counsel say is the nearest in point to their contention in this case. In the case cited, the tenant owned the furniture, and it was upon the rented premises, subject to the landlord's lien, when Mrs. Lehman purchased it a short time before it was distrained for rent, and it was still upon the rented premises when seized. The court held that it was subject to the landlord's lien, evidently upon the ground that the lien had attached while the property was on the premises as the property of the tenant, and that the lien was not lost by the purchase of Mrs. Lehman, she having constructive notice, because of the fact that the property was on the rented premises at the time of her purchase. The same doctrine is applied in the case of Block v. Latham, 63 Texas, 414, and Marsalis v. Pitman, 68 Texas, 626.

In the case at bar, if we are correct in our views of the subject, the lien at no time attached to the property distrained. The statute gives the landlord a lien on the property of the tenant on the rented premises. the common law rule, that it attaches to the property of a stranger on the premises at the time of the levy, is giving away in this country to the necessities of trade.

In the case of Sewing Machine Company v. Sloan, 87 Pennsylvania State, 438, it was held that the common law rule did not apply to goods held by the tenant for sale on commission, and the court quoted the language of Chief Justice Gibson approvingly, that "there is little reason to doubt that the exceptions will, in the end, eat out the rule." Goods on storage in a rented warehouse are exempt, and where the goods are necessarily put in the possession of the tenant by those with whom he deals or by those who employ him, or left for the purposes and benefit of trade, are exempt from distress.

In the case of Connah v. Hale, 23 Wendell, 462, it was held that goods deposited "to await an opportunity of sale" by the owner, were privileged from distress. In the case cited many exceptions to the common law rule are mentioned, and stress is laid upon the tendency of the courts in this country to construe liberally the principles of exception and to abolish the rule. It seems that it would be more simple to reverse the rule and make exceptions.

Taylor, in his work on Landlord and Tenant, after stating the rule (section 583) says (section 584), that "the tendency of our decisions is, upon the whole, against the right of distraining goods not the property of the tenant, but it has been observed that to abrogate it altogether might lead to results not sufficiently adverted to." He refers to the fraud that might occur and the power of a tenant to rent the premises to a subtenant (not for the whole term) who, not being liable to the landlord for rent, would be a stranger, whose goods on the premises would be protected.

It seems to the writer that the difficulties in changing the rule could be easily met by exceptions, where applicable, in favor of the lien, as in Mississippi, where the common law rule does not prevail, it is held that the goods of a third person are privileged from distress, except by contract to pay the rent. Patty v. Bogle, 59 Miss., 491.

The question has been practically settled in this State. It was held in the case of Biesenbach v. Key, 63 Texas, 81, that the separate estate of the wife on the premises at the time of the levy of a distress warrant was not liable unless the contract for rent was made for the benefit of herself, her children, or her separate estate. In the case cited it was held that the property distrained was community property and was, therefore, liable on the contract of the husband. The principle that he could not contract so as to bind the wife, except as stated, would place her in the same attitude as any other stranger, certainly not in a less responsible position, and if her goods were not liable, being found on the rented premises a stranger's goods would be exempt. He could not contract for either. The lien claimed arises from the fact that the property is on the rented premises. If such lien would not exist against the wife's property, it would not against another stranger's.

Where the common law rule prevails, it is held that chattels found on the premises and belonging to the wife of a third party would be subject to the lien, though there existed a constitutional provision exempting the wife's property from the debts of the husband. Kennedy v. Lange, 50 Md., 91. The goods of the tenant's wife or of a stranger's wife do not rank as an exception where the common law rule is enforced. She is treated as any other stranger. So the rule laid down in this State exempting the wife's separate property must be the rule as to any other stranger, there being no exception in the statute in the wife's favor.

As an original question, at this time, it would be difficult to show a good reason why the landlord should have a lien on the property of a stranger on rented premises. It is probably due to this fact that the common law rule is breaking down, and should break down. He is still allowed a preference lien on the property of his tenant on the premises and this, it would seem, would be sufficient to satisfy all reasonable demands in his favor.

If, as in the case before us, strangers, who supply the tenant with the means to occupy the rented premises and carry on a business therein successfully and profitably, should be held to pledge the property so fur-

nished to secure the landlord in the payment of rent, such a burden would be an impediment to the business and discourage its successful operation. These are good reasons why the common law rule should not be enforced at this time.

We find in the facts none of the elements of estoppel on the part of plaintiffs. The landlord is not shown to have been deceived or led into the renting of the premises by any act or representation of the owners of the goods distrained; nor is it shown that he would not have rented to Solon Costley, but for some assurance that the property gratuitously furnished him by plaintiffs would be bound for the rent. If the law does not give the landlord a lien, he has none by estoppel under the facts. No principle of equity can be invoked to create a lien in his favor under the facts. If Albert Costley and Tom Moore were put in possession of the premises and the property seized, for the purpose of running the saloon for Washington & Costley Bros. and Berry & Moore Bros., and a part of the unexpired term of such occupancy was taken by Solon Costley and the landlord distrained to collect the rent for such time, the lien would exist against the parties for whose benefit the business was carried on *by operation of law* and not by estoppel.

So, we can not see that the testimony of Albert Costley to the effect that he and Tom Moore were running the business for the owners of the property seized and for their benefit, would, if the jury had given it credit, have created the estoppel claimed by appellants. It might have shown an obligation to pay the rents by the owners of the business, and consequently established a lien upon their property as the real tenants, but not an obligation by estoppel.

We find no error as assigned by appellants, and the judgment of the lower court is affirmed.

*Affirmed.*